MEMORANDUM
 

 COLLIER, District Judge.
 

 This case is before the Court on cross motions for summary judgment. Plaintiffs Johnny L. Anderson, Abe Hayes, Jr., Wendell Maupin, and Timothy L. Winder, filed a Motion for Partial Summary Judgment (Court File No. 16) and supporting brief (Court File No. 17). Defendant the City of Cleveland, Tennessee (“City”) filed a response (Court File No. 22). The City also filed its own Motion for Summary Judgment (Court File No. 14) and supporting brief (Court File No. 15). Plaintiffs filed a brief in opposition to the City’s Motion (Court File No. 21). Plaintiffs claim they were wrongfully denied overtime pay in violation of the Fair Labor Standards Act (“FLSA”), 29 U.S.C. §§ 201,
 
 et. seq.
 
 The City contends Plaintiffs are “exempt” employees under 29 U.S.C. § 213(a)(1). For the following reasons, the Court will GRANT the City’s motion and DENY Plaintiffs’ motion.
 

 I.
 
 STANDARD OF REVIEW
 

 Under
 
 Fed.R.Civ.P.
 
 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show no genuine issue of material fact exists,
 
 Lansing Dairy, Inc. v. Espy,
 
 39 F.3d 1339, 1347 (6th Cir.1994);
 
 Kentucky Div., Horsemen’s Benev. & Protective Assoc., Inc. v. Turfway Park Racing Assoc., Inc.,
 
 20 F.3d 1406, 1411 (6th Cir.1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party.
 
 Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986);
 
 Oakland Gin Co., Inc. v. Marlow,
 
 44 F.3d 426, 429 (6th Cir.1995);
 
 City Management Corp. v. U.S. Chemical Co., Inc.,
 
 43 F.3d 244, 250 (6th Cir.1994).
 

 Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);
 
 Lansing Dairy,
 
 39 F.3d at 1347;
 
 Horsemen’s Benev.,
 
 20 F.3d at 1411;
 
 see also Guarino v. Brookfield Township Trustees,
 
 980 F.2d 399, 404-06 (6th Cir.1992) (holding courts do not have the responsibility to search
 
 sua sponle
 
 the record for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment.
 
 Celotex,
 
 477 U.S. at 323,106 S.Ct. 2548.
 

 The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); 60
 
 60 Ivy Street Corp. v. Alexander,
 
 822 F.2d 1432, 1435-36 (6th Cir.1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide “whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.”
 
 Anderson,
 
 477 U.S. at 2,51-52, 106 S.Ct. 2505. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment.
 
 *908
 

 Id.; Lansing Dairy,
 
 39 F.3d at 1347;
 
 Horsemen’s Benev.,
 
 20 F.3d at 1411.
 

 II.
 
 RELEVANT FACTS
 

 All of the Plaintiffs are employed by the City of Cleveland Police Department as police officers and occupy the rank of Lieutenant in the Operations Division. The Operations Division is divided into four teams, with each Plaintiff being over his own team. Three of the Plaintiffs— Hayes, Anderson and Maupin — are Lieutenants in the Patrol Unit. Plaintiff Winder is the Lieutenant in the Special Operations Unit. This unit includes the SWAT team, the K-9 Unit, the community policing substations and volunteer organizations, the school resource officers, the public service unit and the police reserve unit. Each Plaintiff reports to Captain John Thomas McLain.
 

 From the evidence presented by the parties, the organization of the Cleveland Police Department appears to be typical of municipal police departments. Usually, such departments are composed, in descending order of authority, of a chief of police, lesser intermediate ranks such as deputy chiefs, majors, captains, lieutenants, and sergeants, and at the lower end of the spectrum, line police officers or patrolmen. All of these police officers are uniformed or commissioned officers. In addition to the commissioned officers, such departments typically also have a number of non-uniformed or “civilian” employees such as dispatchers.
 

 The three Plaintiffs who work as Patrol Lieutenants rotate every six months between three shifts, 7:00 am - 3:00 pm, 3:00 pm - 11:00 pm, and 11:00 pm - 7:00 am. Winder, as Special Operations Lieutenant, does not have a set schedule, as his job functions require him to work varying hours. Beneath the rank of Lieutenant are sergeants and patrol officers. Plaintiffs contend they perform duties almost identical to those performed by sergeants and patrol officers. The City maintains, however, Plaintiffs primary duties are managerial in nature.
 

 Patrol Lieutenants are often referred to as shift or watch commanders (Court File No. 15, Ex. 1, Deposition of Abe Hayes,'Jr. (“Hayes Depo.”), p. 27). According to Plaintiffs, Patrol Lieutenants “command,” “coordinate,” or “direct” a particular shift using a regular team of 2 sergeants and 9 patrol officers
 
 (Id.;
 
 Court File No. 15, Ex. Nos. 2 & 3, Deposition of Wendall Maupin (“Maupin Depo.”), p. 37; Deposition of Johnny L. Anderson (“Anderson Depo.”), p. 18). Hayes, Maupin and Anderson all concede they are “in charge” of each shift in the sense they can tell inferior officers what to do and they are responsible for everything that takes place on their shifts (Hayes Depo. at 114, Maupin Depo. at 24, Anderson Depo. at 18). They are also responsible for disciplining lower-ranking officers on their teams and, if necessary, taking over difficult situations in the field (Hayes Depo. at 107, 43-44; Maupin Depo. at 19, 22, 47-48; Anderson Depo. at 18). Patrol Lieutenants perform yearly evaluations of the two sergeants in their patrol unit, review and approve patrol officer evaluations submitted by their sergeants, and determine whether community complaints directed at the officers under their command should be sent on to Internal Affairs for further investigation (Hayes Depo. at 24, 64, 46, 70-71; Maupin Depo. at 22-23, 27; Anderson Depo. at 16-17, 21-22).
 

 A typical shift for each of the three Patrol Lieutenants begins with an assessment of what has occurred on the previous shift, what situations currently need attention, and where to allocate manpower during the current shift (Hayes Depo. at 44-45; Maupin Depo. at 33-34, 42-43; Anderson Depo. at 27-28). The Patrol Lieutenant then conducts roll call, discussing situations left over from the previous shift and giving out patrol assignments
 
 (Id.).
 
 The Patrol Lieutenant, as shift commander, decides where to allocate his patrol unit during the shift and
 
 *909
 
 may delegate some of these responsibilities to his sergeants, but, as discussed above, he remains responsible for everything that takes place during his shift. Plaintiffs may spend anywhere from 50 minutes to two hours at the station, assessing the situation and conducting roll-call, before heading out in their patrol cars for most of the remainder of their shifts (Maupin Depo. at 42, Anderson Depo. at 29). Unlike sergeants and patrol officers, a Patrol Lieutenant is not assigned to patrol a circumscribed area of the city and instead monitors activity throughout the city limits (Hayes Depo. at 83; Anderson Depo. at 22-23, 28,
 
 see
 
 Maupin Depo. at 44-45).
 

 Plaintiffs are not dispatched to calls (Anderson Depo. at 23-26). Patrol Lieutenants monitor the radio in order to keep tabs on their men and determine where their assistance is needed (Maupin Depo. at 17-18). In the case of a major crime or a serious traffic accident, a Patrol Lieutenant will usually go to the scene in order to assist and supervise where necessary: “I’d assist, supervise where necessary, tell the officers what they need to do,” (Hayes Depo. at 34;
 
 see also
 
 Anderson Depo. at 23-26). Patrol Lieutenants may also choose to respond to calls for other reasons. For example, the shift commander might respond to a call in order to lend assistance or direction, observe an officer’s performance for evaluation purposes, or address a question or problem at the scene (Hayes Depo. at 36-37,
 
 85;
 
 Anderson Depo. at 22-25; and Maupin Depo. at 18-19, 44-48). Plaintiffs do not regularly issue citations, make arrests, or prepare incident reports (Hayes Depo. at 55-56, 92-93; Anderson Depo. at 24-25, 34; Maupin Depo. at 46-47). Although the Patrol Lieutenant usually acts in a backup capacity when responding to a scene, he has the option of taking over if, in his opinion, the officer or sergeant originally dispatched to the scene is not handling the situation well or lacks sufficient experience (Hayes Depo. at 37-38, Maupin Depo. at 40-41, 45-46, Anderson Depo. at 23-25).
 

 At the end of each shift, the shift commander returns to the station to fill out his “Watch Commander’s Report,” summarizing the events of his shift (Hayes Depo. at 89-90, Anderson Depo. at 35). He also reviews the daily incident reports prepared by his patrol officers to make sure all required information is complete and signs off on them before they are filed (Hayes Depo. at 40-41; Maupin Depo. at 43-44; Anderson Depo. at 34-35). These duties might be delegated to one of the sergeants if the Patrol Lieutenant is tied up at the end of a shift. The Patrol Lieutenant, however, is at all times responsible for seeing these tasks get done properly (Hayes at 89-90, Maupin at 43-44). Although the Patrol Lieutenants must keep the Captain informed of what occurs on their shifts, the Captain has little direct contact with the patrol officers (Anderson Depo. at 45-46). Because the Captain only works from 9:00 am until 5:00 pm, the Patrol Lieutenants make most day to day decisions without having to seek guidance or approval from the Captain, although the shift commanders on first and second shift usually try to check in briefly every day (Hayes Depo. at 84, 102-103, Maupin Depo. at 53, Anderson Depo. at 37).
 

 Lieutenant Winder, the Special Operations Lieutenant, supervises ten officers, including two sergeants (Court File No. 15, Ex. 5, Deposition of Timothy L. Winder (“Winder Depo.”), pp. 7, 11). Lieutenant Winder, who does not work a regular shift schedule, has chosen to delegate many of his administrative duties to his sergeants (Winder Depo. at 17-18). Winder plans, coordinates and supervises SWAT team operations, license check points and coverage of special events
 
 (Id.
 
 at 18-21, 23, 53-54, 59-60). He is primarily responsible for manpower deployment and oversight of the operations themselves
 
 (Id.).
 
 Winder submits all plans for the Special Operations Unit’s activities to Captain McLain for ultimate approval
 
 (Id.
 
 at 53-54, 55-56). In addition to coordinating Special Opera
 
 *910
 
 tions activities, Winder also oversees community substations located throughout the city and the officers assigned to those substations
 
 (Id.
 
 at 18-21). He recommends officers for assignment to community substations and for special training schools
 
 (Id.
 
 at 21, 45). During drug raids, traffic check points and community, events, Winder works alongside his men
 
 (Id.
 
 at 18-21, 23-24). However, he is always in charge of these operations and remains accountable for his unit’s conduct and safety during all of these operations
 
 (Id.
 
 at 19-20, 42, 52). In some circumstances, Winder can approve overtime and vacation time for the men in his unit
 
 (Id.
 
 at 25-26). He also manages a budget allocated for any special equipment he determines is needed in his unit
 
 (Id.
 
 at 43). Additionally, Winder evaluates his sergeants, and reviews and approves his sergeants’ evaluations of the Patrol Officers
 
 (Id.
 
 at 14-15). Like the Patrol Lieutenants, he can discipline the sergeants and officers who work beneath him
 
 (Id.
 
 at 51).
 

 Plaintiffs’ own testimony clearly indicates they assume the entire responsibility for the Police Department’s particular law enforcement function while they are on the job. That is, they answer not only for their own actions, but for the actions of their subordinates. While working, a Patrol Lieutenant acts as the highest ranking authority overseeing the street patrol function. The Patrol Lieutenant decides the best method for carrying out this function and must explain or justify any failure, whether it be his own or that of one of his men, to fulfill this law enforcement role. These three Plaintiffs do not merely carry out the instructions of a higher authority. Rather, they have been delegated the task of coordinating and conducting street patrol law enforcement for the city of Cleveland. Similarly, Winder is in charge of the Special Operations function of law enforcement. He determines what manpower is needed for a particular operation and how that manpower should be deployed. Winder, by his own admission, is at all times responsible for the safety of his men. In deciding how his job should be done, Winder, like the Patrol Lieutenant Plaintiffs, exercises authority and discretion. When Plaintiffs are working, they use delegated authority to direct their men and carry out the function of law enforcement. They are responsible for the actions of their inferior officers because they, not the Captain, are directing and monitoring those officers.
 

 All of the Plaintiffs receive a salary in excess of $255.00 per week (Court File No. 18, Ex. 12). Their salary is not subject to any disciplinary or other deductions (Mau-pin Depo. at 34-35; Anderson Depo. at 61-62; Winder Depo. at 52). Although some sergeants might occasionally make more than Plaintiffs based on length of service or on account of overtime, the base salary for lieutenants is higher than the base range for sergeants (Winder Depo. at 52, Maupin Depo. at 51). When Plaintiffs are evaluated, they are judged at least in part on their decision-making skills, communication and leadership skills, productivity and operational economy, evaluation and development, and planning and organization (Hayes Depo. at Ex. 5, Maupin Depo. at Ex. 12, Anderson Depo. at Ex. 17, Winder Depo. at Ex. 24).- The City, at least, believes their supervisory and decision-making capabilities are important to the job (Hayes Depo. at 85).
 

 Each of the Plaintiffs testified during his deposition that Lieutenants often work in excess of 40 hours per week. Plaintiffs maintain they are not exempt employees under the FLSA and should be reimbursed at time-and-a-half for those additional hours. The City contends Plaintiffs are exempt as salaried, supervisory employees. Before classifying Plaintiffs’ positions as exempt, the City consulted the text of the FLSA, its regulations and interpretive guidance, and Department of Labor opinion letters (Court File No. 15, Ex. 6, Deposition of Jeffery Glen Davis (“Davis Depo.”), pp. 84-86). The City’s representative also contacted a DOL representative and an independent consultant
 
 *911
 
 with regards to classifications about which he was concerned
 
 {Id.
 
 at 31-33, 44-45). The City’s representative even contacted other city governments to find out how they classified the various positions within their own police departments
 
 {Id.
 
 at 49). There is no evidence in the record indicating the City sought a specific opinion letter from the DOL or the advice of an attorney.
 

 Plaintiffs brought this lawsuit on February 8, 1999 to recover the overtime pay allegedly due to them. On account of the City’s filing, pursuant to a stipulation by the parties, of an Amended Answer on January 20, 2000 (Court File No. 20), only the following issues remain for adjudication:
 

 1. ) whether the Plaintiffs are exempt from the minimum wage and overtime provisions of the FLSA as
 
 bona fide
 
 salaried executive employees,
 

 2. ) whether the two or three year statute of limitations for recovery of unpaid wages applies, and
 

 3. ) whether Plaintiffs are entitled to an award of liquidated damages.
 

 Plaintiffs have moved for partial summary judgment, arguing there is no genuine issue of material fact regarding their status as covered employees, or the applicability of the three-year limitations period and the FLSA’s liquidated damages provisions. Defendants have moved for summary judgment, contending there is no genuine issue of material fact regarding Plaintiffs’ exempt status, the applicability of the two-year limitations period, and the unavailability of liquidated damages.
 

 III.
 
 DISCUSSION
 

 After a careful review, the Court concludes Plaintiffs are exempt executive employees not covered by the overtime provisions of the FLSA. The Court’s decision in this case is primarily determined by Sections 207 and 213 of the FLSA and several of the Department of Labor’s implementing regulations. Although courts in other circuits have addressed how these FLSA provisions and regulations apply in the law enforcement context, the United States Court of Appeals for the Sixth Circuit has not issued a published FLSA decision addressing the unique problems that may arise when a court confronts the issue of whether law enforcement officials may be considered exempt employees. In a case like this one, dealing with employees who perform a government service function, that is law enforcement, the Court must adapt some of the more familiar concepts developed under the FLSA to fit a new paradigm.
 

 A. The FLSA
 

 In determining Plaintiffs’ exempt status, the Court looks first to the language of the two FLSA provisions applicable in this case: 1) Section 207, which mandates a maximum hour restriction and provides for overtime pay when that restriction is exceeded,
 
 [1]
 
 and 2) Section 213, which provides an exemption from the FLSA’s overtime provisions for those engaged in executive, administrative or professional employment.
 
 [2]
 
 Section 207 sets a forty (40) hour workweek, and requires employers to pay employees one-and-one-half times their
 
 *912
 
 usual hourly wage for every hour worked over forty in any given week. Section 213 exempts all
 
 bona fide
 
 executive, administrative and professional employees from the maximum hour and overtime provisions of Section 207. That means, employers may require their
 
 bona fide
 
 executive, administrative and professional employees to work more than forty hours per week without becoming liable for overtime pay.
 

 Evidently, Section 207 was enacted to serve the “dual purpose of inducing the employer to reduce the hours of work and to employ more men and of compensating the employees for the burden of a long workweek.”
 
 Walling v. Youngerman-Reynolds Hardwood Co.
 
 325 U.S. 419, 423, 65 S.Ct. 1242, 1244, 89 L.Ed. 1705 (1945). The statute attempts to achieve this objective by granting the right of overtime pay to all non-exempt employees, i.e., those employees who come within the commonly understood designation of workers as distinguished from managers, superintendents, foremen or bosses.
 
 Evans v. Continental Motors Corp.,
 
 105 F.Supp. 784 (E.D.Mich.1952). If an employer regularly requires more than forty hours a week from its workforce, it must either hire more workers, or compensate its current workforce with overtime pay, commonly referred to as “time and a half.”
 

 In enacting the FLSA, Congress chose not to provide definitions for many of the terms used therein and instead delegated to the Department of Labor (“DOL”) the responsibility of implementing and clarifying the Act. Although the DOL has enacted a body of regulations that provide guidance and interpretations, the regulations do not precisely define the terms “executive” or “administrative.” Consequently, under one of the basic principles of statutory construction, the Court must understand these terms in accordance with their common meaning in light of any interpretive guidance to be gleaned from the DOL regulations. In Webster’s Third New International Dictionary, the word “executive” is defined as “one who holds a position of administrative or managerial responsibility in a business or other organization.”
 
 Id.
 
 at 794 (1993). The same reference defines “administer” as “to mange the affairs of.”
 
 Id.
 
 at 27.
 

 After construing the FLSA, the Court concludes the plain meaning of the statutory language supports the determination Plaintiffs are exempt under Section 213 as executive employees. Plaintiffs have all testified they are “responsible” in a managerial sense for a particular function of law enforcement. The Patrol Lieutenants deploy their men, delegate tasks, and assume responsibility for everything that takes place during a particular patrol shift. Lieutenant Winder performs an identical role during Special Operations assignments. Section 213 exempts “executive” employees from the maximum hour/overtime provisions of Section 207. The ordinary meaning of “executive” is one who holds “managerial responsibility” in a business or other organization. Plaintiffs, who hold managerial responsibility over their subordinate officers in the Police Department, therefore appear to be exempt, executive employees under Section 213 the FLSA.
 

 B. Department of Labor Regulations
 

 The Court’s application of the FLSA to exempt Plaintiffs from the maximum hour/overtime provisions of Section 207 is also supported by the DOL’s regulatory guidance. Congress expressly delegated to the DOL the tasks of implementing the FLSA and of developing regulations. The FLSA grants to the Secretary of the Department of Labor (“Secretary of Labor”) broad authority to define and delimit the scope of the exemption from the overtime pay requirements for executive, administrative, and professional employees.
 
 Auer v. Robbins,
 
 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). The DOL’s regulations interpreting and clarifying the descriptions
 
 *913
 
 “executive,”
 
 [3]
 
 and “administrative,”
 
 [4]
 
 have therefore particularly influenced the Court’s decision in this case.
 

 The DOL regulations describe an “executive” as an employee: 1) whose primary duty is management,
 
 2)
 
 who regularly directs the work of two or more employees, 3) who has the authority to affect a change in the employment status of his or her subordinates, and 4) who exercises discretion.
 
 See
 
 29 C.F.R. § 541.1. Plaintiffs all have “management” as their primary duty. They manage the Police Department resources, i.e., equipment and manpower, by determining how those resources should be deployed in order to carry out the law enforcement function. All of the Plaintiffs regularly direct the work of at least two Sergeants and several patrol officers, and they evaluate or oversee evaluation of their subordinates for purposes of promotion, demotion, and continued employment with the Department. Finally, Plaintiffs exer
 
 *914
 
 cise discretion in disciplining their men, determining when work should be delegated, deploying department resources, and determining when to respond to a scene in order to provide backup, take charge, or evaluate the performance of a subordinate. According to their own descriptions of the jobs they perform, Plaintiffs appear to satisfy the DOL’s definition of “executive” employees.
 

 Even though the City has chosen to abandon its claim Plaintiffs may, in the alternative, qualify as exempt “administrative” employees, the Court still finds the regulations interpreting the administrative function helpful in forming a general picture of the types of employees Congress envisaged would be exempt under Section 213. The Secretary of Labor has defined an “administrative” employee as one: 1) whose primary duties consist of “office or nonmanual work directly related to management policies or general business operations,” 2) “who customarily and regularly exercises discretion and independent judgment,” and 3) “who executes under only general supervision special assignments and tasks.” Plaintiffs perform primarily office and/or nonmanual work directly related to the business of law enforcement. As discussed above, they also exercise discretion and independent judgment on a consistent basis, and they carry out their multiple and complex duties with only general supervision from the Captain. The fact Plaintiffs also might qualify as “administrative” employees lends further support for the Court’s determination they are the type of employees Congress meant to exempt from the provisions of Section 207.
 

 Because the regulations interpreting the “executive” exemption use time spent performing “management of the enterprise” as a determinative factor, the Court has also relied upon the DOL regulation clarifying that term. 29 C.F.R. Section 541.102
 
 [5]
 
 states “[i]n the vast majority of cases the bona fide executive employee performs managerial and supervisory functions which are easily recognized as within the scope of the exemption.” 29 C.F.R. § 541.102(a). This language provides support for the Court’s position the terms of the Section 213 exemption are to be given their ordinary, common sense meanings. Management tasks should be easily recognizable as such, and the examples given in subparagraph (b), make this point clearer. This regulation lists,
 
 inter alia,
 
 directing the work of others and disciplining them where necessary; planning the work, determining the techniques to be used in performing it and apportioning it among employees; and evaluating the work of subordinates, as “management” functions. These are all the types of work commonly associated with managerial or executive employees, and these are all tasks Plaintiffs have said they perform in carrying out their duties as police officers.
 

 The fact Plaintiffs often work alongside their subordinate officers in the field is not
 
 *915
 
 fatal to their claim. For example 20 C.F.R. Section 541.103
 
 [6]
 
 defines when management should be considered the “primary duty” of an employee. 29 C.F.R. Section 541.206
 
 [7]
 
 discusses “primary duty” in the administrative employee context. The latter regulation specifically refers to the former when discussing how to determine “primary duty” in the context of an employee who performs both exempt and nonexempt work. Both regulations provide for a situation where an exempt employee performs many of the same tasks performed by his subordinates, but can be distinguished from them because the exempt employee is at all times acting in a management or ministerial capacity.
 
 See
 
 29 C.F.R. §§ 541.103, 541.206(b). The Secretary of Labor has therefore interpreted the Section 213 exemption to include those employees who like the Plaintiffs in this case, may, on occasion, work alongside their subordinates.
 

 The regulations also recognize exempt employees may not fit comfortably into one of the three categories: executive, administrative, or professional. 29 C.F.R. Section 541.600
 
 [8]
 
 allows “tacking” of ex
 
 *916
 
 empt work for determining whether an employee spends the majority of his or her time performing executive, administrative, or professional tasks. Thus, the fact Plaintiffs may divide their time between administrative and executive tasks does not disqualify them from the Section 213 exemption, provided their primary duties consist of a combination of managerial and ministerial tasks.
 
 See
 
 29 C.F.R. § 541.600.
 

 Under the analysis set forth above, the DOL regulations interpreting the Section 213 exemption clearly support the Court’s determination, based on the plain language of the FLSA, Plaintiffs are exempt employees. The regulatory guidance provides the terms of the exemption are to be given their ordinary common sense meanings, and leads to the conclusion Plaintiffs fit the category of employees Congress intended to exempt from the maximum hour and overtime provisions of Section 207. Even though Plaintiffs, as providers of the government service of law enforcement, may not fit exactly the regulatory paradigm designed primarily to address the distinction between white collar managers and a blue collar, labor intensive workforce, they are still engaged in the job of “management” as that term is commonly understood.
 

 C. Case Law
 

 The body of case law' developed under the FLSA does not contradict the Court’s understanding of the statutory language, nor does it conflict with the Court’s reading of the DOL regulations. On the contrary, the relevant case law reveals other courts addressing the extent and application of the of the Section 213 exemption have taken a similar approach.
 

 1. The Section 213 Exemption is Narrowly Construed
 

 The United States Court of Appeals for the Sixth Circuit has explained:
 

 Section 13(a) of the FLSA ... entirely exempts from the overtime pay requirement any employee who is employed in a bona fide executive, administrative, or professional capacity. 29 U.S.C. § 213(a)(1). This exemption is to be “narrowly construed against the employers seeking to assert [it].” Application of the exemption is limited to those circumstances plainly and unmistakably within the exemption’s terms and spirit. The employer bears the burden of proving that the exemption applies to the employee in question.
 

 Douglas v. Argo-Tech Corp.,
 
 113 F.3d 67, 70 (6th Cir.1997) (some internal citations omitted). In determining whether the exemption applies or not, courts have focused on whether the employee’s activities are directly related to the management polices or general business operations of the business or enterprise.
 
 Roney v. U.S.,
 
 790 F.Supp. 23, 27 (D.D.C.1992). The case law has made clear the nature of an employer’s business does not determine whether employees act in an executive, administrative, or professional capacity, within the meaning of Section 213. Rather, the character, type, and extent of activities and duties performed by employees plays the primary role in any decision regarding the applicability of the exemption.
 
 Martin v. Penn Line Service, Inc.,
 
 416 F.Supp. 1387, 1389-90 (W.D.Pa.1976). To put it more succinctly, the function performed by the employee determines his or her status. A court should therefore hesitate before relying on the title of the position or other,
 
 *917
 
 non-functional aspects of the employee’s job.
 

 The Plaintiffs’ deposition testimony reveals, while on duty, they execute the Cleveland Police Department’s law enforcement function. They are
 
 in charge
 
 of that function. Consequently, Defendants are entitled to summary judgment on the issue of Plaintiffs’ status as “exempt” employees under Section 213 of the FLSA. Courts apply a “short test” when the complaining employee is paid “on a salary or fee basis at a rate of not less than $250 per week.” 29 C.F.R. § 541.2(f)(2). Under the short test, to establish an employee falls within the administrative exemption and avail itself of this affirmative defense, the employer has the burden of proving: (1) it paid the employee on a salary or fee basis; (2) the employee’s “primary duty” consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision, and (3) the employee customarily and regularly directs the work of two or more other employees. 29 C.F.R. § 541.2(a)(1), (e)(2);
 
 Douglas,
 
 113 F.3d at 70-71. In this case, the parties are in agreement the short test applies because all Plaintiffs receive a base salary in excess of $250.00 per week.
 

 Because the parties do not dispute Plaintiffs’ status as salaried employees, the resolution of this case revolves around the final two factors, namely whether Plaintiffs’ primary job duty involves management of the police department, or a recognized subdivision, and whether they regularly direct the work of two or more other employees. Plaintiffs’ own deposition testimony reveals they regularly direct the work of two sergeants and nine, for the Patrol Lieutenants, or ten, for the Special Operations Lieutenant, patrol officers. Furthermore, Plaintiffs descriptions of their job duties show their daily responsibilities consist primarily of managerial and supervisory tasks. Exceptions under the FLSA are to be narrowly construed against the employer.
 
 Mitchell v. Kentucky Finance Co., 359
 
 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). Case law has made clear, however, “[t]he supervision of other employees is clearly a management duty.”
 
 (Donovan v. Burger King,
 
 672 F.2d 221 (1st Cir.1982), as quoted in
 
 Glefke v. K.F.C. Take Home Food,
 
 1993 WL 521993, *4 (E.D.Mich., Aug.27, 1993)).
 

 2. Some Police Officers May Qualify for the Section 213 Exemption
 

 As discussed previously, the Sixth Circuit has not issued a published decision on the applicability of the Section 213 exemption to the law enforcement context. A number of other Circuits, however, have considered FLSA cases involving police officers. In
 
 Auer v. Robbins,
 
 65 F.3d 702 (8th Cir.1995),
 
 certiorari granted
 
 518 U.S. 1016, 116 S.Ct. 2545, 135 L.Ed.2d 1066 (1996),
 
 affirmed
 
 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the United States Court of Appeals for the Eighth Circuit considered whether detective police sergeants were covered by the maximum hour/overtime provisions of Section 207. That court decided the detective sergeants qualified as exempt “executive” employees under Section 213.
 
 Id.
 
 at 714. In
 
 Auer
 
 the detective police sergeants supervised the work of 13 to 16 detectives.
 
 Id.
 
 at 713-14. The subordinate detectives were required to provide sergeants with all information concerning police matters, and sergeants reviewed information concerning interrogations and interviews.
 
 Id.
 
 at 714. The sergeants consistently used discretion to ensure the case load was being managed correctly, and, although sergeants might sometimes become directly involved in investigations, their primary duty was to manage and oversee the investigative function and report results up chain of command.
 
 Id.
 

 In
 
 Hilbert v. District of Columbia,
 
 23 F.3d 429 (D.C.Cir.1994) the United States Court of Appeals for the D.C. Circuit reached a similar result. In that case, the court held, for the period subsequent to September 6, 1991, when the Department
 
 *918
 
 of Labor issued regulatory guidance superseding the no-docking rule for most public employees, District of Columbia police captains and lieutenants could be considered exempt from the overtime provisions of the FLSA.
 
 Id.
 
 at 431. The United States Court of Appeals for the Ninth Circuit came to the same conclusion in
 
 Barner v. City of Novato,
 
 17 F.3d 1256 (9th Cir.1994). That case held police officers satisfied the requirements of Section 213, when they managed a recognized subdivision of the police department, .even though the officers often performed the same duties as their subordinates.
 
 Id.
 
 at 1260-61. The Ninth Circuit stated even though the officers might occasionally perform a task as menial as railroad crossing guard work, the plaintiffs carried the rank of lieutenant or captain and had supervision over an entire aspect of police department operation, such as services, patrol, and youth services.
 
 Id.
 

 During their depositions all Plaintiffs testified they were “in charge” of their particular units. They admitted they have the power to direct the work of those under their supervision, and they have authority to determine how the men under their command are utilized. The Patrol Lieutenants assign work at roll-call and then spend the rest of the day on patrol monitoring, over the radio and on the scene, the work of the sergeants and patrol officers in their unit. Although they may delegate some of their duties to their sergeants, the Patrol Lieutenants are at all times responsible for what takes place on their shifts. In fact, the ability to determine when and to whom work may be delegated is itself an indicia of management. Winder, the Special Operations Lieutenant, makes plans regarding how the men in his unit should be utilized in drug raids, SWAT team excursions and community events requiring police coverage. During these activities, he supervises their execution and remains responsible for the safety of his men. Based on Plaintiffs’ own descriptions of their day to day tasks and the case law set forth above, the Court must conclude they spend a large portion of their time on the job supervising other policemen, and supervision of other employees is clearly a function of management.
 

 3. The “Working Foreman” Interpretation Does Not Apply in this Context
 

 In support of their position they are covered employees, Plaintiffs attempt to analogize themselves to the “working foremen,” discussed in
 
 Shockley v. City of Newport News,
 
 997 F.2d 18, 26 (4th Cir. 1993). “One type of working foreman or working supervisor ... perform[s] the same kind of work as that performed by their subordinates, and also carries, on supervisory functions. Clearly, the work of the same nature as that performed by the employee’s subordinates must be counted as non-exempt work ...” 29 C.F.R. § 541.115(b). Plaintiffs argue their work cannot qualify them as exempt because it is, for the most part, identical to the work performed by their subordinate sergeants, who are classified as hourly employees. Before embarking on a discussion of
 
 Shockley,
 
 the Court notes the “working foreman” regulation was designed to fit a factory floor or construction site paradigm, and is not really suited to the law enforcement context.
 

 For example, Sergeant Dennis Maddux, who filled in for nine months as a lieutenant testified during his deposition he found the only difference between hourly sergeants and salaried lieutenants was “one or two pieces of paperwork,” (Court File No. 18, Ex. 9, Deposition of Dennis Mad-dux (“Maddux Depo.”), p. 25). Plaintiffs also point to a list of “Essential Functions,” generated by an outside consultant for both positions in 1997. The consultant listed a lieutenant’s essential functions as “supervising shift operations; enforcing law; investigation of criminal activity; testifying in court; ensuring safety of the public; preparing and maintaining files, records and reports,” (Hayes Depo. at Ex.
 
 *919
 
 1). Plaintiffs maintain the sergeant’s list of essential functions was almost identical: “serving as shift supervisor; performing all the law enforcement duties of a police officer or detective; handling or assisting with difficult law enforcement or investigative situations; preparing and maintaining records, files and reports,” (Court File No. 18, Ex. 13). Finally, Plaintiffs contend monitoring the radio cannot count as a managerial task because
 
 all
 
 policemen, even patrol officers, are required to monitor the radio.
 

 After examining
 
 Shockley
 
 and reviewing Plaintiffs’ own deposition testimony regarding their job duties, the Court concludes Sergeant Maddux’s testimony and the alleged similarity between the job descriptions provides more support for the proposition sergeants might also be classified as exempt employees than it does for the proposition Plaintiffs are not exempt. “Whether a particular duty is administrative or managerial presents a legal question ‘governed by the pertinent regulations promulgated by the Wage and Hour Administrator.’ ”
 
 Shockley,
 
 997 F.2d at 26. In
 
 Shockley
 
 the district court held plaintiffs acting as Patrol Sergeants were exempt supervisory employees.
 
 Id.
 
 The United States Court of Appeals for the First Circuit affirmed the district court’s holding:
 

 The district court considered several factors persuasive in finding that the Sergeants’ primary duty was management. The Sergeants were responsible for evaluating the performance of the officers they supervised. Although the evaluations were carefully scrutinized by the supervising lieutenant, the Sergeants uniformly agreed that their recommendations were almost always followed. The Sergeants also had a higher salary range than their subordinates, although their actual salary might be lower depending upon the number of years of service.... In addition, the particular responsibilities of the individual sergeants demonstrate that management was their primary duty.
 

 Patrol Sergeants’ responsibilities included making adjustments for sick personnel and determining which district their officers would patrol. They determined which equipment was available and issued it as necessary.... They briefed the patrol officers regarding any special orders or about any investigations. While on the streets, the Patrol Sergeants monitored the radio and backed up patrol officers when required. They had and exercised the authority to overrule a dispatcher and change assignments.
 

 Id.
 
 at 26-27.
 

 The First Circuit’s description of the Patrol Sergeants’ responsibilities in
 
 Shockley
 
 meshes almost exactly with Plaintiffs’ own descriptions of their job duties. Plaintiffs all evaluate the sergeants in their units and review the sergeants’ evaluations of the patrol officers. They also have a higher salary range than sergeants or patrol officers, even though a sergeant might occasionally make more due to seniority or overtime pay. The Patrol Lieutenants determine how to allocate manpower on each of their shifts, and Winder, the Special Operations Lieutenant, determines how his men will be utilized during a particular assignment. Winder also makes decisions about how to use his budget in purchasing needed equipment for his unit. The Patrol Lieutenants spend ten to twenty minutes during roll-call briefing their subordinates on assignments, special orders and ongoing investigations. Plaintiffs also testified that while they are on patrol, they monitor the radio and back up their sergeants and patrol officers if needed.
 

 Most importantly, all Plaintiffs are charged with the responsibility of executing an entire law enforcement function, and they carry out this task with only general supervision from the Captain. When Plaintiffs monitor the radio or work alongside their men in a backup capacity, they are doing so in order to ensure the
 
 *920
 
 law enforcement function with which they have been charged is being carried out correctly. Unlike patrol officers, Plaintiffs decide which areas of the City need attention, where they are needed for backup, and where their subordinates should be assigned. Although Plaintiffs may, at one time or another, perform all of the duties carried out by their subordinates, their accountability for everything that takes place under their command and their ability to exercise discretion sets them apart from inferior officers.
 

 In
 
 Shockley,
 
 the First- Circuit determined a similar combination of criteria indicated the police officer plaintiffs were managerial and supervisory employees. As a result, the Court concludes
 
 Shockley
 
 does not support the proposition Plaintiffs were mere “working foremen.” On the contrary, that case lends further support for the Court’s determination Plaintiffs spend most of their time on the job performing supervisory and managerial tasks-.
 

 The Court’s conclusion is also supported by relevant Sixth Circuit authority applying the “working foreman” model in a more traditional context. In
 
 Jones v. ENSR Corp.,
 
 117 F.3d 1420 (table) (1997 WL 369440) (6th Cir.1997), the Sixth Circuit addressed the question of when a supervisory employee, who spends a portion of his time performing tasks identical to those of his subordinates, will still qualify for the executive exemption. In affirming the district court’s grant of summary judgment, the appeals court held a crew foreman who described himself as the “guy in charge” or the “guy responsible for the crew,” evaluated the work of his crew members, reported job progress to his supervisors, participated in training and interviewing, delegated tasks for the day or for the project, and exercised discretion in disciplining his crew, was a
 
 bona fide
 
 executive employee within the meaning of Section 213(a).
 
 Id.
 
 at *2.
 

 In the case at hand, Plaintiffs testified they are “in charge” of their units and are responsible for everything that takes place while they are on duty. They evaluate their subordinates, report major occurrences or problems to the Captain, delegate tasks, and exercise discretion in disciplining their men. Plaintiffs also testified they spend very little time performing basic police work like making arrests, issuing citations and investigating crime, and when they work alongside their men, it is in a backup or support capacity. The evidence also shows Plaintiffs were regularly evaluated on their supervisory and managerial capabilities, indicating Plaintiffs primary value to the City was as supervisors rather than ordinary police officers. Based on this evidence and Plaintiffs’ own testimony, the Court concludes its determination Plaintiffs are exempt employees is further compelled by the Sixth Circuit’s reasoning in
 
 Jones.
 

 As discussed in Part III.B. above, the Court’s decision is also supported by the DOL regulations implementing the FLSA. According to these regulations managerial duties include,
 
 inter alia,
 
 directing the work of other employees, disciplining other employees, providing for the safety of subordinates, planning work, apportioning the work among workers, determining techniques to be used, and evaluating employees for purposes of promotion or other changes in status. 29 C.F.R. § 541.102(b). These are all the kinds of tasks that occupy the majority of Plaintiffs’ days on the job. The Court therefore concludes, based on the “totality of the circumstances,” Plaintiffs qualify for the executive exemption, even though they perform some regular police work while they are acting in a supervisory capacity.
 
 See
 
 29 C.F.R. § 541.103.
 

 4. Courts Have Applied the Section 213 Exemption in Analogous Contexts
 

 The Court also finds instruction in eases addressing the applicability of the exemption to municipal emergency assistance employees. Although firefighters and paramedics are not engaged in law enforcement, they are municipal employees who
 
 *921
 
 perform a government service involving public safety.
 

 In
 
 West v. Anne Arundel County, Md.,
 
 137 F.3d 752 (4th Cir.1998),
 
 certiorari denied 525
 
 U.S. 1048, 119 S.Ct. 607, 142 L.Ed.2d 548 (1998), the United States Court of Appeals for the Fourth Circuit held among
 
 emergency
 
 medical technicians (EMT) employed by a county fire department, those EMTs ranked as captains, including positions of captain-operations, captain-training coordinator, and captain-duty officer, were “executives” exempt from the FLSA’s overtime requirements.
 
 Id.
 
 at 763. The EMT captains were paid on salary basis.
 
 Id.
 
 at 762-63. They spent most of their time managing personnel and performing related management tasks, and they customarily supervised either one fire station or entire shift of officers.
 
 Id.
 
 at 763. In concluding the EMT captains were exempt, the Fourth Circuit held a “shift” or station unit constituted a recognized subdivision of the Fire Department.
 
 Id.
 

 In the case,
 
 sub judice,
 
 the three Patrol Lieutenants have testified they are “in charge” of their particular shifts. Winder, the Special Operations Lieutenant, has testified he “in charge” of the Special Operations unit. Thus, under the Fourth Circuit’s reasoning in
 
 West,
 
 Plaintiffs appear to satisfy the DOL requirement executive employees have as their primary duty “the management of the enterprise in which [they are] employed
 
 or of a customarily recognized department or subdivision thereof.”
 
 29 C.F.R. § 541.1(a) (emphasis added). Similarly, several district courts have held Captains and/or Lieutenants in a city fire department were “executives” exempt from the maximum hour/overtime provisions of Section 207 when they managed the entire station house during their shift.
 
 See, e.g., Keller v. City of Columbus, Ind.,
 
 778 F.Supp. 1480 (S.D.Ind.1991);
 
 International Ass’n of Fire Fighters, Alexandria Local 2141 v. City of Alexandria, Va.,
 
 720 F.Supp. 1230 (E.D.Va.1989),
 
 affirmed
 
 912 F.2d 463 (4th Cir.1990).
 

 Finally, in
 
 Hartman v. Arlington County, Va.,
 
 720 F.Supp. 1227 (E.D.Va.1989), affirmed 903 F.2d 290 (4th Cir.1990), the district court held fire shift commanders of a county fire department were exempt from the overtime compensation requirements of Section 207 even though they occasionally performed such activities as cleaning the station house and assisting the public with directions.
 
 Id.
 
 at 1229. The district court held the exemption applied because the shift commanders’ responsibilities for ensuring the readiness of equipment and crew, and their duty to supervise at the scene of a fire outweighed the fact they spent some of their time engaged in menial activities.
 
 Id.
 
 This conclusion supports the Court’s position Plaintiffs should be considered exempt even though they occasionally perform menial tasks such as writing citations or directing traffic at the scene of an accident.
 

 The above-cited cases demonstrate how the Section 213 exemption has been applied in other cases involving municipal employees who perform a service related to public safety. They all support the Court’s conclusion Plaintiffs, who are municipal employees engaged in protecting the public welfare, are executive or managerial employees. As a result, the Court finds further support in these cases for its decision to apply the Section 213 exemption in the City’s favor in this case.
 

 IV.
 
 CONCLUSION
 

 Even when all evidence is viewed in the light most favorable to Plaintiffs, the record in this case compels the Court’s conclusion Plaintiffs are executive employees exempt from the overtime provisions of the FLSA. Accordingly, the Court will GRANT the City’s Motion for Summary Judgment. Plaintiffs’ Motion for Partial Summary Judgment will be DENIED. Because the Court has concluded, as a matter of law, Plaintiffs are exempt employees, it does not reach the issues of the applicable statute of limitations or the availability of liquidated damages. There
 
 *922
 
 being no other issues remaining for adjudication, the Court will also- ORDER the case DISMISSED with prejudice.
 

 An Order shall enter.
 

 [1]
 

 . Section 207 of the FLSA provides:
 

 (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
 

 29 U.S.C. § 207.
 

 [2]
 

 . Section 213 reads in pertinent part:
 

 The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and
 
 section 207 of this title shall not apply with respect to .. .
 

 (1)
 
 any employee employed in a hona fide executive, administrative, or professional capacity
 
 ....
 

 29 U.S.C. § 213 (emphasis added).
 

 [3]
 

 . Section 541.1 Executive.
 

 The term employee employed in a bona fide executive *** capacity in section 13(a)(1) of the Act shall mean any employee:
 

 (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of subdivision thereof; and
 

 (b) Who customarily and regularly directs the work of two or more other employees therein; and
 

 (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
 

 (d) Who customarily and regularly exercises discretionary powers; and
 

 (e) Who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section ...: and
 

 (1) Who is compensated for his services on a salary basis at a rate of not less than $155 per week ..., exclusive of board, lodging, or other facilities: Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week, exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.
 

 29 C.F.R. § 541.1
 

 [4]
 

 . Section 541.2 Administrative
 

 The term employee employed in a bona fide *** administrative *** capacity in section 13(a)(1) of the Act shall mean any employee:
 

 (a) Whose primary duty consists of either:
 

 (1) The performance of office or nonman-ual work directly related to management policies or general business operations of his employer or his employer’s customers, or
 

 (2) The performance of functions in the administration of a school system ...; and
 

 (b) Who customarily and regularly exercises discretion and independent judgment: and
 

 (c) (1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations of this subpart), or
 

 (2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or
 

 (3) Who executes under only general supervision special assignments and tasks; and
 

 (d) Who does not devote more than 20 percent ..., of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section . ..: and
 

 (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week ..., exclusive of board, lodging, or other facilities: Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week, exclusive of board, lodging, or other facilities, and whose primary duty consists of the performance of work described in paragraph (a) of this section, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all the requirements of this section.
 

 29 C.F.R. §541.2
 

 [5]
 

 . Section 541.102 Management:
 

 (a) In the usual situation the determination of whether a particular kind of work is exempt or nonexempt in nature is not difficult. In the vast majority of cases the bona fide executive employee performs managerial and supervisory functions which are easily recognized as within the scope of the exemption.
 

 (b) For example, it is generally clear that work such as the following is exempt work when it is performed by an employee in the management of his department or the supervision of the employees under him: Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.
 

 29 C.F.R. § 541.102.
 

 [6]
 

 . Section 541.103 Primary Duty
 

 A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee’s time.... Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. For example, in some departments, or subdivisions of an establishment an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty. In the data processing field an employee who directs the day-to-day activities of a single group of programmers and who performs the more complex or responsible jobs in programming will be considered to have management as his primary duty.
 

 29 C.F.R. § 541.103.
 

 [7]
 

 . Section 541.206 Primary Duty
 

 (a) The definition of "administrative” exempts only employees who are primarily engaged in the responsible work which is characteristic of employment in a bona fide administrative capacity. Thus, the employee must have as his primary duty office or nonmanual work directly related to management policies or general business operations of his employer or his employer’s customers ....
 

 (b) In determining whether an employee’s exempt work meets the "primary duty” requirement, the principles explained in Sec. 541.103 in the discussion of "primary duty” under the definition of "executive” are applicable.
 

 29 C.F.R. § 541.206.
 

 [8]
 

 . Section 541.600
 

 (a) The divisions’ position under the regulations in subpart A of this part permits the “tacking” of exempt work under one section of the regulations in subpart A to exempt work under another section of those regulations, so that a person who, for example, performs a combination of executive and professional work may qualify for exemption. In combination exemptions, however, the employee must meet the stricter of the requirements on salary and nonexempt work. For instance, if the employee performs a combination of an executive’s and an outside salesman’s function (regardless of which occupies most of his time) he must meet the salary requirement for executives. Also, the total hours of nonexempt work under the definition of "executive” together with the hours of work
 
 *916
 
 which would not be exempt if he were clearly an outside salesman, must not exceed either 20 percent of his own time or 20 percent of the hours worked in the workweek by the nonexempt employees of the employer, whichever is the smaller amount, (b) Under the principles in paragraph (a) of this section combinations of exemptions under the other sections of the regulations in subpart A of this part are also permissible. In short, under the regulations in subpart A, work which is "exempt” under one section of the regulations in subpart A will not defeat the exemption under any other section.