2004 VT 92

## In re Reapportionment of TOWNS OF WOODBURY AND WORCESTER

[861 A.2d 1117]

No. 02-304

¶ 1. September 13, 2004. Petitioners, citizens of the towns of Woodbury and Worcester, challenge the Legislature's 2002 reapportionment of voting districts for the Vermont House of Representatives on grounds that placement of their towns in the new Lamoille-Washington-1 district violates constitutional and statutory requirements. We deny petitioners' challenge.

¶ 2. To maintain equal representation in the General Assembly, the constitution requires the Legislature to reapportion its voting districts after each decennial census. See Vt. Const. ch. II, § 73. While the primary constitutional criterion is numerical equality, the Legislature must also "seek to maintain geographical compactness and contiguity and to adhere to boundaries of counties and other existing political subdivisions." Vt. Const. ch. II, § 13.

¶ 3. The statutory criteria for reapportionment reflect these requirements. In the process of reapportioning by population, 17 V.S.A. § 1903(a), statutory provisions also require that

districts shall be formed consistent with the following policies insofar as practicable:

(1) preservation of existing political subdivision lines;

(2) recognition and maintenance of patterns of geography, social interaction, trade, political ties and common interests;

(3) use of compact and contiguous territory.

17 V.S.A. § 1903(b).

¶ 4. The reapportionment process for the House is initiated by the appointment of a bipartisan legislative apportionment board (the board). *Id.* § 1904. The board must prepare a tentative proposal dividing the state into initial districts, and then notify the affected municipal boards of civil authority for their review. *Id.* § 1905. After considering recommendations from the towns, the board must forward its final plan of initial districts to the clerk of the house. *Id.* §§ 1905, 1906. The Legislature may then accept the proposal, or enact a substitute plan. *Id.* § 1906. Once initial district boundaries are drawn, those districts with two or more members may be subdivided either by agreement of the towns in the district or by the Legislature. *Id.* §§ 1906a, 1906b, 1906c. The final reapportionment plan must be composed of districts containing no more than two members. *Id.* § 1906c.

¶ 5. In the present case, the board's proposed initial redistricting plan placed the petitioning towns of Woodbury and Worcester, along with Calais, Middlesex, and East Montpelier in the two-member Washington-4 district, and the neighboring towns of Morristown, Elmore, and Wolcott in the two-member Lamoille-3 district. Statewide, civil authorities in at least forty-seven towns criticized the board's proposed plan. Petitioners' towns did not object.

¶ 6. The board forwarded its plan, and a list of issues raised by the dissatisfied towns, to the house government operations committee (the committee) on August 15, 2001. Over the next five months, the committee conducted a series of public hearings around the state and at the state house and hosted an interactive web site that allowed citizens to draft their own plans. The committee also held at least 23 meetings, where members took testimony, discussed objections, prepared maps and spreadsheets and voted on numerous redistricting options. In response to public input and objections from various towns, the committee eventually prepared a revised plan for initial House districts that, among other things, moved Woodbury and Worcester into a newly created Lamoille-Washington-1 district along with the towns of Elmore and Morristown. The district forms the shape of a capital T. Elmore is located at the top center of the T and is bounded by Morristown on the west, Woodbury on the east, and Worcester on the south.

¶ 7. Both chambers, and their respective redistricting committees, engaged in significant debate and multiple votes to amend the initial plan and several times rejected proposals to remove Woodbury and Worcester from the proposed Lamoille-Washington-1 district. After the Senate passed a "strike all" bill substantially modifying the House proposal and returning Woodbury and Worcester to the districts initially proposed by the board, the chambers appointed a conference committee to resolve their differences. The conference committee's compromise plan, which was eventually adopted and signed by the Governor, see 2001, No. 85 (Adj. Sess.), § 1, placed Woodbury and Worcester in the Lamoille-Washington-1 district.

¶ 8. Woodbury and Worcester then voted to divide Lamoille-Washington-1 into two single-member districts. That

proposal, which would have split Morristown, was rejected by the boards of Elmore and Morristown. The House also rejected the proposal to split the district. The final statewide reapportionment plan subdividing the initial districts into one- and two-member districts left Lamoille-Washington-1 as a two-member district composed of the towns of Woodbury, Worcester, Elmore and Morristown. 2001, No. 151 (Adj. Sess.), § 53. This appeal followed.

¶ 9. The Supreme Court has original and exclusive jurisdiction over any challenge to a legislative reapportionment made by five or more citizens. 17 V.S.A. § 1909(a), (f). However, we review the Legislature's redistricting plan with considerable deference.

> Redistricting is primarily a matter for legislative consideration and determination. Accordingly, the redistricting plans approved by the General Assembly are presumed to be valid, and there is a heavy burden of proof on those who allege that a redistricting plan violates the Constitution. Further, it is primarily the Legislature, not this Court, that must make the necessary compromises to effectuate state constitutional goals and statutory policies within the limitations imposed by federal law. Accordingly, the Legislature must resolve the tension that exists between the one-person, one-vote requirement and state laws concerning the maintenance of compact and contiguous districts made up of communities with common interests. If a plan is consistent with the fundamental constitutional requirement that districts be drawn to afford equality of representation, we will return it

to the Legislature only when there is no rational or legitimate basis for any deviations from other constitutional or statutory criteria.

*In re Reapportionment of Towns of Hartland, Windsor & West Windsor*, 160 Vt. 9, 14-15, 624 A.2d 323, 326-27 (1993) (internal quotations and citations omitted).

¶ 10. In reviewing the specific violations claimed by petitioners, we must consider the redistricting plan as a whole, taking into account the statewide implications. *Id.* at 15-16, 624 A.2d at 327. To make a prima facie case, petitioners must show "that the State has failed to meet constitutional or statutory standards or policies with regard to a specific part of the plan." *Id.* at 16, 624 A.2d at 327. Only then does the burden shift to the State "to show that satisfying those requirements was impossible because of the impermissible effect it would have had on other districts." *Id.*

¶ 11. Petitioners initially challenged the creation of the Lamoille-Washington-1 district on the grounds that it: (1) violated constitutional requirements of geographical compactness and contiguity; (2) failed to adhere to county boundaries and other existing political subdivisions; (3) failed to recognize and maintain patterns of geography, social interaction, trade, political ties, and common interests; and (4) created an extreme numerical inequality between large and small towns within the district, aggravated the above violations, and effectively disenfranchised petitioners' towns.

¶ 12. Pursuant to 17 V.S.A. § 1909(d), the Court appointed a special master who took testimony and issued findings of fact regarding each of these claims. The master found that all four towns have one or more boundaries in common with another town in the district, and that the T-shaped district "in fact is contiguous and

relatively compact." Petitioners do not dispute this finding.

¶ 13. Petitioners have reframed their remaining claims in light of certain findings issued by the master. First, petitioners argue that the plan is "per se unconstitutional" based on the master's finding that the evidence is "extremely persuasive" that placement of petitioners' towns in the Washington-Lamoille-1 district violates the remaining nonnumerical constitutional and statutory requirements. Second, based on the master's finding that the legislative record is silent as to what nonnumerical factors the Legislature actually considered regarding the Lamoille-Washington-1 district, or the weight given to each factor, petitioners contend that meaningful review of the plan is impossible and that it must, at a minimum, be remanded for reconsideration of these factors.

¶ 14. The specific nonnumerical criteria that petitioners claim the Lamoille-Washington-1 district violate are the constitutional requirement that the Legislature "seek . . . to adhere to boundaries of counties and other existing political subdivisions," Vt. Const. ch. II, § 13, and the parallel statutory directive to, "insofar as practicable," preserve existing political subdivision lines and maintain patterns of geography, social interaction, trade, political ties and common interests. 17 V.S.A. § 1903(b)(1)-(2).

¶ 15. The heart of petitioners' argument is that Woodbury and Worcester are bedroom communities for Montpelier and Barre, and that their natural social, political and economic interests lie with their fellow Washington County towns to their south and east rather than the Lamoille County towns of Elmore and Morristown, which are over the mountains to their north and west. The Legislature, however, is not obligated to implement the best plan for each district. Rather, it needs to devise a plan that is in conformity with the constitutional and statutory criteria. *Hartland,* 160 Vt. at 42, 624 A.2d at 342 (citing *Gaffney v. Cummings,* 412 U.S. 735, 750-51 (1973)). Thus, in order to prevail, petitioners must show, based on the criteria, that there was no rational or legitimate basis for the creation of the Lamoille-Washington-1 district. *Id.* at 45, 624 A.2d at 327. Upon review of the record, we conclude that petitioners have failed to satisfy this burden.

¶ 16. Petitioners complain that the plan does not adhere to county lines and other political subdivisions. See Vt. Const. ch. II, § 13; 17 V.S.A. § 1903(b)(1). Under our prior cases, however, a district is not invalid merely because it straddles a county line. *Hartland,* 160 Vt. at 31, 624 A.2d at 336; see also *In re Senate Bills 177 & 83,* 132 Vt. 282, 289, 318 A.2d 157, 162 (1974) (crossing county lines does not disqualify plan given difficulties of reaching acceptable result statewide). Overall, the new plan places ninety-eight towns in districts that cross county lines, which is not unusual. In fact, in this respect it is identical to the 1992 reapportionment plan we upheld in *Hartland,* 160 Vt. at 31, 624 A.2d at 336.

¶ 17. Additionally, the State has shown that in formulating the current plan the Legislature repeatedly rejected proposals that would have divided towns in order to follow county lines, including, specifically, proposals that would have divided Morristown in order to place Woodbury and Worcester in a district of their choosing within Washington County. We defer to this judgment, which is neither irrational nor illegitimate. See *In re Senate Bills 177 & 83,* 132 Vt. at 287, 318 A.2d at 160 (recounting Vermont's historical growth from a group of chartered towns to an independent nation and then the fourteenth state, and rationalizing the Legislature's choice to preserve town lines at expense of breaching county lines).

¶ 18. Regarding the other set of criteria, to maintain patterns of geography, trade, political and social ties and common interests, 17 V.S.A. § 1903(b)(2), petitioners argue that their common interests, employment, trade and political and social interaction lie exclusively to the east and south.[1] Petitioners have not, however, shown an absence of common ties with the rest of their district. Although the master's findings clearly indicate that petitioners' preferences and the bulk of their interests may indeed fall outside their current district, the findings also include substantial ties between Woodbury and Worcester, on the one hand, and Morristown and Elmore on the other.

¶ 19. Worcester, which lies at the base of the T-shaped district, is directly linked to Elmore and Morristown by Route 12, which bisects all three towns. The three towns are all part of the Lamoille Regional Solid Waste Management District and the District 5 Environmental Commission. Although more than half of Worcester's working citizens are employed in the Montpelier-Barre region, that is true of most outlying towns in the region, and no proposal would have combined Worcester with either Montpelier or Barre. When comparing Worcester residents not working in Montpelier or Barre, the link between Worcester and Morristown is reasonable as compared to other towns. For example, 4.1% of Worcester residents work in East Montpelier, 4.1% work in Waterbury, and 2.7% work in Morristown.

¶ 20. Woodbury, which lies on the eastern arm of the T-shaped district, is linked to Elmore and Morristown by Routes 14 and 15. Although travel between these towns is not direct — travelers from Woodbury must pass through Hardwick on their way to Elmore and Morristown — the total travel time from Woodbury on one end of the district to Morristown on the other end is relatively short, twenty-five to thirty minutes. Woodbury is also part of the District 5 Environmental Commission. Some state agency offices based in Morristown, such as the Agency of Human Resources' PATH office and the Department of Corrections' district office, serve Elmore and Woodbury. Testimony before the master reflected that some Woodbury residents occasionally visit the movie theater and hospital in Morristown, and that the weekly Hardwick Gazette covers both towns. Of the Woodbury residents not working in Montpelier or Barre, 11.4% work in Hardwick, 5.9% work in Berlin and 5.6% work in Morristown. Both Woodbury and Worcester also stress their small town character and concede that they share that trait with Elmore.

¶ 21. As we observed regarding the town of Shrewsbury's objections in *Hartland*, although petitioners may have more in common with towns outside their district, petitioners' burden of proof is to show that there is no rational basis to join them with towns in the challenged district. *Hartland*, 160 Vt. at 42, 624 A.2d at 342. In *Hartland*, Shrewsbury challenged its placement in a district with Plymouth and Ludlow, towns which were in another county and on the other side of the Green Mountains. Other than the fact that the three towns were geographically adjacent, linked by two different state highways, and shared a common state recreation area and the same transportation district, there was no evidence presented of common interests between Shrewsbury and Plymouth and Ludlow. *Id.* at 41-43, 624 A.2d at 341-42. None-

---

[1] Since Woodbury and Worcester concede that inclusion of their towns in the same district is acceptable under the constitutional and statutory criteria, we do not review the connections between the two towns.

theless, we rejected Shewsbury's claims, noting that petitioners had "not shown the *absence* of social, economic, or political ties among the towns in the challenged district." *Id.* at 42, 624 A.2d at 342 (emphasis added). Here, there is far more evidence of common social, economic and political ties between Woodbury and Worcester and the other towns in their new district. These ties, together with the other criteria — numerical equality, geographic contiguity and compactness, and political boundaries — provide a rational and legitimate basis for the Legislature's decision.

¶ 22. Additionally, we note that Woodbury and Worcester have not come forward with a better plan. See *id.* at 43, 624 A.2d at 342-43 ("Petitioners ... may cast doubt on the validity of a legislative plan by demonstrating that the Legislature failed to adopt an alternative that substantially improves on that plan ...."). Petitioners have suggested that the board's original plan, and their proposal to split Lamoille-Washington-1 into two single member districts, are both better options. The record does not support petitioners' contentions. Regarding the board's plan, the committee first proposed the Lamoille-Washington-1 district as part of its attempt to resolve numerous other problems with the board's plan. Once Woodbury and Worcester objected to the new district, the Legislature and its committees considered several proposals to resolve their concerns, including repeated attempts to revert to the board's original proposal regarding the two towns. According to testimony of committee members, the board rejected the attempt to revert to the board's plan because of the so-called "ripple effect": that is, because it would have created new problems in as many as fifteen other districts. Similarly, other fixes were rejected because of opposition from affected towns. For example, a proposal to join Woodbury and Worcester with El-

more and Wolcott was rejected because it would have forced the subdivision of Morristown. The proposal to split Lamoille-Washington-1 into two single-member districts was rejected for the same reason.

¶ 23. Testimony from House committee members indicates that as a result of its revisions the overall number of "hot spots" dropped from forty-seven towns that objected to the board's original plan to "somewhere in the neighborhood of 20" towns that complained about the final bill. Of those twenty, only Woodbury and Worcester challenged the plan in court. Given this history, even if we assume that petitioners have met their burden of showing that the formulation of the Lamoille-Washington-1 district violated constitutional and statutory criteria, their challenge would still likely fail. See *id.* at 16, 624 A.2d at 327 (stating that once a plan is shown to be in violation of the reapportionment criteria, burden shifts to the State to show that "satisfying those requirements was impossible because of the impermissible effect it would have had on other districts"). Here, as explained above, the State showed that both chambers of the General Assembly heard repeated objections from Woodbury and Worcester regarding the new district and considered various plans to resolve those concerns. In each case, the Legislature heard evidence regarding relevant constitutional and statutory criteria, but ultimately voted the counterproposals down because of negative effects on other districts. Cf. *id.* at 27, 624 A.2d at 333-34 (remanding reapportionment plan regarding town of Montgomery because, after burden shifting, State failed to show that Legislature considered any nonnumerical criteria, or that it could not produce a plan that adhered to all criteria).

¶ 24. Petitioners' second claim is that meaningful judicial review of the 2002

reapportionment plan is impossible since, according to the master's findings, the legislative record is silent as to which nonnumerical factors the Legislature actually considered regarding the Lamoille-Washington-1 district, or the weight given to each factor. Petitioners also make the related contention that without express verification in the legislative record that each criterion was considered, remand is required. See *id.* at 18, 624 A.2d at 328 (holding that failure to consider all constitutional and statutory facts requires remand to the Legislature). Regarding the latter contention, we find no infirmity in the process the board and the Legislature followed. As the master found, "at almost all stages of the proceedings evidence was presented to the committees with respect to commonality of interests or lack thereof as to any proposed house district, and that indeed considerable evidence was presented to the committees with respect to those factors." The Legislature considered all criteria.

¶ 25. Thus, petitioners' only remaining complaint relates to the master's finding that because most of the legislators' discussions took place "in the halls," the available evidence provides "very little insight" into the Legislature's decision making process. Specifically, petitioners argue that such off the record discussions prevent this Court or the citizens of Woodbury and Worcester from reviewing the Legislature's rationale for creating the district, and from ensuring that it did not consider outside factors, or give improper weight to any one factor. While a better legislative record might be desirable, particularly for problematic districts as here, given our conclusion that the Lamoille-Washington-1 district meets constitutional and statutory criteria, a remand to supplement the record would serve no purpose.

¶ 26. Moreover, we disagree with petitioners' suggestion that the so-called "ripple effect" is an impermissible consideration, outside the constitutional or statutory criteria. The constitution and the statutory provisions both acknowledge that it is impossible to absolutely comply with all numerical and nonnumerical criteria in all districts. Rather, the requirement is that the Legislature "seek" to meet the nonnumerical criteria, Vt. Const. ch. II, § 13, and comply with statutory policies "insofar as practicable." 17 V.S.A. § 1903(b). Thus, there is no barrier to consideration of the statewide ramifications, i.e., the size of the ripple, created by each proposed change. Indeed, the Legislature must rely on this consideration in order to select the plan that comes closest to meeting all criteria in all districts.

¶ 27. Lastly, we reject petitioners' final contention, that the paucity of common interests, combined with extreme intradistrict population imbalances, will effectively disenfranchise their towns. The combined population of Woodbury, Worcester and Elmore is less than one-third the population of Morristown.[2] Petitioners contend that as a result their smaller towns are "totally isolated without ability to influence in any significant way their representation in the Vermont legislature."

¶ 28. We addressed this issue in *Hartland* in response to a challenge by the town of Berlin.

> The residents of Berlin are not disenfranchised simply because they make up a minority of their two-member representative district. Even in situations involving racial or political groups, proportional representation is not constitutionally re-

---

[2] Populations of the four member towns of the Lamoille-Washington-1 district are: Elmore 849, Morristown 5,139, Woodbury 809, and Worcester 902.

quired. See *Davis v. Bandemer*, 478 U.S. [109,] 132 [(1986)] (one cannot presume that the winning candidate will entirely ignore the voters who supported the losing candidate; "a group's electoral power is not unconstitutionally diminished by the simple fact of an apportionment scheme that makes winning elections more difficult"). Members of a group are disenfranchised only when they are denied an opportunity to effectively influence the election results by securing the attention of the winning candidate.

160 Vt. at 37, 624 A.2d at 339. Petitioners have made no showing that they have no opportunity to influence the election or secure the attention of the winning candidate. Indeed, to the contrary, the most recent election saw a resident of the second smallest town, Elmore, elected as one of the district's two representatives.

¶ 29. In conclusion, we hold that petitioners, citizens of Woodbury and Worcester, have failed to meet the heavy burden required to challenge a legislative reapportionment plan. We reiterate our prior holdings that this Court will retain jurisdiction of reapportionment plans to ensure that the Legislature fully considers and meets, "insofar as practicable," 17 V.S.A. § 1903(b), all nonnumerical criteria. See, e.g., *id.* at 21, 624 A.2d at 330 (finding nonnumerical criteria are not superfluous, rather they serve the important purpose of assuring more effective representation). We are not, however, a superlegislature. As we explained in reviewing the Legislature's decision to keep the town of Montgomery in its new district after remand, so long as the Legislature has weighed the necessary criteria and its decision is not irrational or illegitimate, we will defer to the Legislature's judgment in resolving tensions between constitutional and statutory criteria for reapportionment. *In re Reapportionment of Town of Montgomery*, 162 Vt. 617, 617, 647 A.2d 1013, 1014 (1994) (mem.).

*The petitions of the residents of the towns of Woodbury and Worcester are denied.*

Note: Chief Justice Amestoy sat for oral argument but did not participate in this decision.