Turnley v. Town of Vernon, No. 544-10-09 Wmcv (Wesley, J., Aug. 12, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                    **CIVIL DIVISION**
**Windham Unit**                                      **Docket No. 544-10-09 Wmcv**


**Kevin Turnley**
    **Plaintiff**


    **v.**


**Town of Vernon**
    **Defendant**


## Order Granting
## Defendant's Motion for Summary Judgment

Plaintiff, Kevin Turnley, has accused the Defendant, Town of Vernon, of violating state and federal employment law for failing to compensate him for overtime. See 29 U.S.C. § 207(a)(1); 21 V.S.A. § 384(b). Defendant, Town of Vernon, seeks summary judgment on these claims as a matter of law on the grounds that: 1) Vermont's wage and hours laws do not apply to town employees; and 2) Plaintiff qualifies as an employee who is "exempt" from overtime pay requirements under the Federal Fair Labor Standards Act ("FLSA"). Concluding that Defendant's arguments are sound on the law when applied to the undisputed facts, the Court grants Defendant's Motion for Summary Judgment..

**Facts**

In 1994, the Town of Vernon hired Plaintiff as a police officer. After a brief hiatus, when Plaintiff returned in 2002, he was again employed as a police officer. In 2003, Plaintiff was promoted to the position of sergeant. On September 25, 2005, he was appointed Acting Chief of the Vernon Police, and on February 26, 2006, Plaintiff was appointed Chief of Police, the position he held at the commencement of this action.[1]

Plaintiff was compensated as Chief on a salary basis at a rate not less than $455 per week, and received a predetermined amount each week that constituted his salary whether or not he actually was engaged in duties on behalf of the Town, i.e. Plaintiff's pay was not docked when he was on vacation or out sick. When he was hired as Chief, Plaintiff was not promised overtime pay.

The job description for Chief of Police for the Town of Vernon lists a series of managerial duties and responsibilities. For example, the Chief would be responsible for, *inter alia* : 1) organizing, directing and controlling all resources of the department necessary for crime prevention and investigation; 2) designating a subordinate officer to serve as Commanding

---

[1] Plaintiff was subsequently terminated as Chief for reasons not directly germane to this action for overtime pay. The circumstances of the termination are the subject of a separate lawsuit in Doc. No. 13-1-10 Wmcv.

Officer in his absence; 3) planning, directing, coordinating, controlling and staffing all activities of the police department; 4) developing and supervising a training program for all members of the department through the development and implementation of a training committee; 5) executing patrol and investigative responsibilities largely through the direction of subordinate officers and police officers, but assuming charge as Chief of Police when important or difficult events or investigations were in progress; 6) planning and developing operating procedures and police functions; 7) prescribing and enforcing rules and regulations for the department; and 8) assigning personnel to regular shifts and reviewing these assignments periodically.

As Chief of Police, Plaintiff performed the responsibilities that were part of the 'job description' for the position. Plaintiff, at one time or another, supervised between three and five subordinate employees. He hired personnel with the approval of the Town Selectboard. He made recommendations about eliminating positions within the department that were adopted by the Selectboard, though the Selectboard did not always agree with Plaintiff's personnel decisions. Plaintiff prepared the department's annual budget, which was subject to review and revision by the Selectboard. As Chief, Plaintiff assumed supervisory control for patrol assignments, and maintaining "law enforcement visibility" throughout the town, which included undertaking patrol assignments himself.

**Standard**

Summary judgment is appropriate when the moving party has demonstrated that there are no genuine issues of material fact that would preclude it from being entitled to judgment as a matter of law. *State of Vermont v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995); V.R.C.P. 56(c). The non-moving party is entitled to the benefit of all reasonable doubts and inferences in determining whether genuine issues of material fact exist. *Wilcox v. Village of Manchester Zoning Bd. Adj.*, 159 Vt. 23, 26 (1992); *Hodgdon v. Mt. Mansfield Co., Inc.,* 160 Vt. 150, 158-59 (1992). The nonmoving party may survive the motion if it responds with specific facts raising a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to establish an essential element of its case on which it has the burden of proof at trial, the moving party is entitled to summary judgment as a matter of law. *Id.* Accordingly, a party opposing summary judgments may not rest on allegations unsupported by evidence. *Morais v. Yee*, 162 Vt. 366, 370 (1994). Allegations alone do not create issues of material fact. *Lucas v. Hahn,* 162 Vt. 456, 458 (1994).

An additional burden is placed on Defendant in this instance, since by raising a defense that Plaintiff qualifies as an employee exempt from FLSA's provisions regarding overtime pay, Defendant bears the burden of proving the exemption's applicability. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974).

**Plaintiff's State Wage and Hour Claims**

Vermont law obliges an employer to pay employees time-and-a-half for hours worked in excess of 40 hours during a workweek. 21 V.S.A. § 384. However, this requirement "shall not apply to . . . [t]hose employees of a political subdivision of this state." *Id*. at § 384(b)(6). Defendant asserts that it is indisputable that Plaintiff is an employee of the Town of Vernon, and

that the Town is a political subdivision of the State.  See *Richards v. Town of Norwich*, 169 Vt. 44, 47 (1999)( "The Town of Norwich is a political subdivision of the state and the selectboard is a board thereof"); see also, *Corcoran v. Department of Employment and Training,* 2005 VT 52, ¶ 4 (Town Clerk not liable for payment of unemployment taxes for his employees since the office is a political subdivision of the State); *In re Reapportionment of Towns of Woodbury & Worcester* , 2004 VT 92, ¶ 2 (recognizing the reference in the Vt. Constitution to towns as political subdivisions of the State).

In response, Plaintiff notes that the statute fails to define "political subdivision," and that none of the cases Defendant has cited in its brief directly addresses the provisions of 21 V.S.A. §384.  This argument borders on the frivolous.  See, 17 V.S.A.§ 2103(24) ("'Political subdivision' means any county, municipality (including cities, towns and villages), school district, fire district, water, sewer or utility district, ward and consolidation of the foregoing entities authorized under the laws of this state").

Where the Legislature's intent can be ascertained from the plain meaning of the statute, Vermont's courts interpret the statute according to the words the Legislature used.  *Herald Ass'n, Inc. v. Dean*, 174 Vt. 350, 354-55 (2002).  Here, a plain reading of the statute leaves the Court with no choice but to conclude that the Town of Vernon is a "political subdivision of this state" as a matter of Constitutional and statutory definition, and that Plaintiff is an employee of the Town.  Plaintiff's claim for unpaid overtime pursuant to Vermont statute must therefore fail as a matter of law, and Defendant is granted summary judgment with respect to Plaintiff's state law claims.

**Plaintiff's Claims under FLSA**

Defendant next asserts that it is entitled to summary judgment on any federal claim raised by the complaint, because Plaintiff is an exempt executive/administrative employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; 29 U.S.C. § 213(a)(1), and thus not entitled to overtime pay.  Plaintiff disagrees and counters that: 1) a genuine issue of material fact exists regarding whether Plaintiff qualifies as an exempt employee under FLSA, and 2) Defendant has failed to carry its legal burden to prove that Plaintiff is exempt.

FLSA's provisions provide that unless otherwise exempted, no employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the forty hours at a rate not less than one and one-half times the regular rate at which he is employed.  29 U.S.C. § 207(a)(1).  However, the overtime provision will not apply to any employee employed in a bona fide executive, administrative[2], or professional capacity.  29 U.S.C. §213(a)(1).

Whether employees' "particular activities excluded them from the overtime benefits of the FLSA is a question of law."  *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).  The burden of proving that an employee is exempt rests on the employer.  See *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966).

---

[2] Because the Court finds that Plaintiff qualifies as an exempt executive employee for purposes of FLSA's overtime provisions, the Court will not decide whether Plaintiff may also be classified as an exempt administrator.

A job title, description, or resume alone is insufficient to establish the exempt status of an employee, but rather, the exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations. 29 C.F.R. § 541.2. The term "employee employed in a bona fide executive capacity" shall mean any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week;
(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
(3) Who customarily and regularly directs the work of two or more other employees; and
(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

To begin, it is undisputed that Plaintiff's salary was not less than $455 a week. It is also undisputed that Plaintiff customarily and regularly directed the work of at least two employees.

Further, an exempt executive is not required to possess full authority to make the ultimate decision regarding another employee's employment status; i.e. when a higher level manager or a personnel board makes the final hiring, promotion, or termination decision. 69 Fed. Reg. at 22,131. Rather, the exemption can apply if the executive employee in question makes recommendations for changes in employment status that carry "particular weight." 29. C.F.R. § 541.100(a) (4). So long as superior officers play an influential rule in interviewing candidates, evaluating potential promotions and meting out discipline, they can still qualify for the executive exemption. See *Murphy v. Town of Natick*, 516 F.Supp. 2d 153 (D.Mass. 2007). In this case, although personnel decisions were often ultimately left to the Town Selectboard, it is undisputed that Plaintiff was in a position to influence such personnel decisions, thus satisfying this prong of the regulation.

Based on this analysis, the Court's only remaining consideration in determining whether Plaintiff qualifies as an exempt executive is whether his "primary duty" was management. The term "primary duty" means the principal, main, major or most important duty that the employee performs. 29 C.F.R. § 541.700(a). Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. *Id*.

Further, the term "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; appraising employees' productivity and

4

efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; planning and controlling the budget; and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102.

Additionally, concurrent performance of exempt and nonexempt work does not necessarily disqualify an employee from the executive exemption. *Id.* Generally, exempt executives make the decision regarding when to perform nonexempt duties, and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. 29 C.F.R. § 541.106. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work, or performs the exempt work for defined time periods. *Id.*

The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. *Id.* at (b). Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion. *Id.*

FLSA's exemptions specifically do not apply to police officers, detectives, deputy sheriffs, state troopers, and similar employees, regardless of rank or pay level, who perform work such as: preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work. 29 C.F.R. § 541.3 Such so-called "first responders" do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed. *Id.* Thus, for example, a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not exempt under the Act merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire. *Id.*

Defendant insists that as Chief of Police, Plaintiff was hired to be the executive officer of the Department, with explicit managerial responsibility for the functioning of the agency, including the supervision of all other officers involved in protecting and serving the public. Defendant further maintains that no construction of the undisputed facts counters the conclusion that Plaintiff's duties were primarily managerial in nature. Plaintiff claims, however, that in reality, he was forced into being a *de facto* police officer, notwithstanding his job title and whatever responsibilities and duties appear within the 'Job Description' for Chief of Police published by the Town. He attributes this status to Defendant Selectboard's supervening control over the Vernon Police Department, and it's refusal to adequately staff the force, resulting in Plaintiff's claims of having no choice but to work approximately 825 hours of what he characterizes as overtime labor. By his description, Plaintiff actually assumed duties akin to a "working chief's" position, and that as a result of his managerial authority being countermanded by the Selectboard, he was forced to work hundreds of overtime hours doing the job of a patrol officer. Thus, he maintains that a material issue of fact persists as to whether he actually

5

exercised primary managerial responsibility consistent with an executive position exempt for the FLSA.

As to the state of the summary judgment record, Plaintiff argues that Defendant has not demonstrated the nature or extent of Plaintiff's non-exempt duties, the extent of Plaintiff's exempt duties, nor any facts to evince Plaintiff's actual daily duties as Police Chief. Plaintiff urges the Court to not simply rely on the supposition that Plaintiff had the "opportunity" to engage in exempt-duties, but that it must have "evidence regarding the actual day to day activities of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance evaluations." *Schaefer v. Ind. Mich. Power. Co.,* 358 F.3d 394, 400 (6th Cir. 2004). In this vein, Plaintiff claims that whether the nature and extent of the duties Plaintiff engaged in were primarily managerial in nature or primarily non-exempt duties is a genuine material fact still in dispute, precluding the award of summary judgment to Defendant. Nevertheless, the Court does not agree and concludes that there can be no reasonable dispute that Plaintiff's primary duty was managerial by its nature and as he carried it out.

It is unsurprising that the Chief of Police in a small, rural town would sometimes take on certain of the tasks of a line officer – including patrol, investigation, report writing, etc. - within a police department employing no more than five or six employees at one time. Indeed, any claim that Plaintiff qualifies under the so-called "first responders" exception to the exemption from FLSA for executive employees is undermined as a matter of fact by Plaintiff's failure to illicit any evidence, including his own sworn testimony, that he substantially functioned as a first-responder. Compare, *Jackson v City of Antonio*, 2006 WL 2548545 (W.D. Tex. 2006) (relying on plaintiff's affidavit that he regularly performed the duties denoted by the first responder exception).

Further, as demonstrated by the cases on which Defendant relies, "the first responder regulation does not preclude any analysis of whether an employee qualifies as an exempt executive or administrative employee." *Maestas v. Day & Zimmerman, LLC,* 2010 WL 5625914 (D.N.M. 2010) (rejecting plaintiffs' characterization of themselves as first responders, since, despite the duty to respond to an emergency in their immediate vicinity, "their primary purpose is to manage the response"). Following the adoption of the "first responder" exemption, high-ranking police officers remain exempt from overtime pay when their primary duty is management. See Wage & Hour Opinion Letter, FLSA 2005-40 (Oct. 14, 2005) (available at 2005 WL 3308611). As the court held in *Rooney v. Town of Groton,* 577 F.Supp. 3d 513 (D. Mass. 2008):

> There may be times when Rooney participates in crime prevention activities and, of course, the overall purpose of the Police Department is to prevent crime. However, the plaintiff's primary duty is none of those listed in the first responder regulation.

*Id.* at 536. Similarly, in another case with facts closely related to those at issue here, the court rejected the claim of a chief of a small police department who sued his municipal employer after a falling out with his political superiors:

The Court finds Bennett fails to raise a material issue of fact as to the City's entitlement to the defense that Bennett was exempt as an executive employee. Bennett testified that he "supposedly" managed the Department, and the list of duties he admits he performed shows that he acted primarily as manager of the Department. While these duties may not have taken up a great percentage of his time, there is no evidence to dispute that his managerial duties were more significant than the time he spent performing those duties.

*Bennett v. City of Gould*, 2007 WL 1288612, (E.D.Ark. 2007).

As Defendant maintains, Plaintiff offers no dispute as to all but three of Defendant's Statement of Undisputed Facts, which set out the wide array of management responsibilities for which Plaintiff was responsible, and performed, as Vernon's police chief. The claim of dispute with the remainder of Defendant's statements justifies its labeling them a "quibble". Plaintiff purports to dispute Defendant's proffer of the job description published at the time he was hired, but he offers no alternative and does not raise a material dispute as to the authenticity of the document he reviewed at his deposition. Furthermore, the descriptions of Plaintiff's responsibilities as chief of police, which Plaintiff does not dispute, can lead to no other conclusion but that his primary responsibilities were managerial. See *Anderson v. City of Cleveland, Tenn*, 90 F.Supp. 2d 906, 913, 920 (E.D.Tenn. 2001); *Nickell v. City of Lawrence, Kan.*, 352 F.Supp. 2d 1147, 1160 (D.Kan. 2004).

Finally, Plaintiff's opposition to summary judgment is unaided by the claim that the Selectboard exercised "over controlling supervision of his work," which allegedly resulted in his "inability to exercise control and discretion over budget, resources and staffing." This resembles the argument rejected in *Bennett* that the police chief only "supposedly" managed the department after ongoing dissension with his political superiors assuredly undermined his authority. Plaintiff offers no authority for the proposition that FSLA's exemption for executive and administrative employees may be forfeited by an executive's claim that his authority was improperly infringed by his employer.

Consequently, the Court finds that Defendant has met its burden of demonstrating that it is entitled to summary judgment as to Plaintiff's claims under FLSA's overtime provisions.

## ORDER

**WHEREFORE** it is hereby **ORDERED**: Plaintiff's Motion for Summary Judgment is **GRANTED**.

Dated at Newfane, Vermont this   12th    day of August, 2011.

_____
John P. Wesley
Presiding Judge

7