Richard **NICKELL, Craig Shanks, Susan Hadl, Kirk Fultz, Tarik Khatib, David Hubbel, Mike Pattrick, Doug Bell, Randy Roberts, Mack Pryor, Paul Fellers and Mark Warren, Plaintiffs,**

v.

**CITY OF LAWRENCE, KANSAS, Defendant.**

No. 03–4070–KGS.

United States District Court, D. Kansas.

Dec. 23, 2004.

Thomas G. Lemon, Cavanaugh, Smith & Lemon, P.A., Topeka, KS, for Plaintiffs.

Gerald L. Cooley, Gilliland & Hayes, P.A., Randall F. Larkin, Gilliland & Hayes, P.A., Lawrence, KS, for Defendant.

## MEMORANDUM AND ORDER

SEBELIUS, United states Magistrate Judge.

This matter comes before the court on Defendant City of Lawrence's Motion for Summary Judgment. (Doc. 52). Plaintiffs, police sergeants in the City of Lawrence Police Department ("LKPD"), brought this suit claiming they were wrongfully denied overtime pay in violation of the Fair Labor Standards Act ("FLSA").[1] Defendant claims Plaintiffs are exempt executive and administrative employees under 29 U.S.C. § 213(a)(1) and are thus not entitled to overtime pay.[2] Having carefully considered the parties' evidentiary submissions, arguments, and applicable law, the court finds that Defendant's motion for summary judgment should be granted.

## I. Summary Judgment Standard.

 Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[3] For purposes of reviewing a summary judgment motion, a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[4] A "genuine" issue of fact exists where "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[6] To meet

1. 29 U.S.C. § 201 et. seq.

2. 29 U.S.C. § 213 provides, in pertinent part: "The provisions of section . . . 207 of this title shall not apply with respect to . . . (1) any employee employed in a bona fide executive, administrative, or professional capacity. . . ."

3. Fed.R.Civ.P. 56(c).

4. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

5. Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir.1998) (citing Anderson, 477 U.S. at 248, 106 S.Ct. 2505).

6. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). See also Doebele v. Sprint Corp., 157 F.Supp.2d 1191, 1195 (D.Kan.2001), Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir.1991).

this standard, the moving party that does not bear the ultimate burden of persuasion at trial does not need to negate the claims of the non-movant; instead, the moving party can simply point out the absence of evidence for the non-moving party on an essential element of that party's claim.[7] Once the moving party satisfies this initial burden in a properly supported motion, the burden shifts to the non-moving party to show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[8] The non-moving party may not rest on mere allegations or denials in its pleading in opposition to summary judgment, but "must set forth specific facts showing that there is a genuine issue for trial."[9] Therefore, the mere existence of some alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment.[10] The court must consider the record in the light most favorable to the non-moving party.[11]

On a motion for summary judgment, the "judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[12] The standard for summary judgment mirrors the standard for directed verdict. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[13] "If the [c]ourt concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment."[14]

## II. Analysis

This is an action brought solely pursuant to the FLSA. Plaintiffs Richard Nickell ("Nickell"), Craig Shanks ("Shanks"), Susan Hadl ("Hadl"), Kirk Fultz ("Fultz"), Tarik Khatib ("Khatib"), David Hubbel ("Hubbel"), Mike Pattrick ("Pattrick"), Doug Bell ("Bell"), Randy Roberts ("Roberts"), Mack Pryor ("Pryor"), Paul Fellers ("Fellers") and Mark Warren ("Warren," and together with other plaintiffs may be referred to as "Plaintiffs") are, or were at all times relevant to this action, employed by the Defendant City of Lawrence, Kansas, as police sergeants. Plaintiffs claim overtime compensation at a rate of one and one half times their regular rate of pay for hours worked in excess of forty hours per workweek.[15]

Defendant moves for summary judgment in its favor, arguing that Plaintiffs are all exempt executive and administrative employees within the meaning of the FLSA and are, therefore, not entitled to any overtime pay. Defendant contends that there is no dispute as to material facts and that it is entitled to judgment as a

---

7. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000).

8. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

9. *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. 2505.

10. *Id.*

11. *See Doebele*, 157 F.Supp.2d at 1195. *See also Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991).

12. *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505.

13. *Id.* at 251–52, 106 S.Ct. 2505.

14. *Anderson v. City of Cleveland*, 90 F.Supp.2d 906, 907–08 (E.D.Tenn.2000), *citing Anderson v. Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505.

15. Plaintiffs' prayer for relief includes compensatory damages, liquidated damages, and the costs of this action, including their reasonable attorneys' fees.

matter of law. Plaintiffs argue that summary judgment is inappropriate because genuine issues of material fact exist as to whether they are subject to either of the FLSA exemptions.[16]

## A. The Fair Labor Standards Act

The FLSA requires employers to pay their employees time and a half for work in excess of forty hours per workweek.[17] However, the statute exempts from the overtime requirement "any employee employed in a bona fide executive, administrative, or professional capacity." [18] Under the FLSA, an exemption must be established by clear and affirmative evidence,[19] and the employer bears the burden of demonstrating that "the employee fits 'plainly and unmistakenly within the exemption's terms.' " [20] "[E]xemptions are narrowly construed against employers seeking to assert them." [21]

"The terms 'bona fide executive capacity' and 'bona fide administrative capacity' as used in the exemption statute are defined by the [Department of Labor] regulations which fix absolute criteria determinative of the question of exemption." [22]

## B. Executive Exemption

Defendant argues that it is entitled to summary judgment because the Plaintiffs fall within the executive exemption to the FLSA overtime requirements.

The regulations establish two tests for determining whether an employee is an exempt executive-the long test and the short test.[23] The short test applies to employees earning $250 or more per week. The parties agree that, because all the Plaintiffs earned more than $250 per week, the short test applies. Under the short test, an employee is exempt if (1) he is compensated on a salary basis at a rate of not less than $250 per week; (2) his primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and (3) his duties include the customary and regular direction of the work of two or more other employees therein.[24] Only the second prong of the short test is challenged by plaintiffs in this case.

The regulations define what duties qualify as "management duties" in the context of the executive exemption. "In the vast majority of cases the bona fide executive employee performs managerial and supervisory functions which are easily recognized as within the scope of the exemption." [25] Management or supervisory duties include: (1) interviewing, selecting, and training of employees; (2) setting and

---

16. In response to Defendant's motion for summary judgment, Plaintiffs make references to the new Department of Labor regulations addressing exemptions from the FLSA. Because the court does not view the new regulations as controlling in this case, it will not address them in this opinion.

17. 29 U.S.C. § 207(a)(1).

18. 29 U.S.C. § 213(a)(1).

19. *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir.1984).

20. *Carpenter v. City & County of Denver, Colo.*, 82 F.3d 353, 355 (10th Cir.1996) (citations omitted).

21. *Barth v. Wolf Creek Nuclear Operating Corp.*, 125 F.Supp.2d 437, 439 (D.Kan.2000), citing *Brennan v. Dillion*, 483 F.2d 1334, 1338 (10th Cir.1973).

22. *Legg v. Rock Products Mfg. Corp.*, 309 F.2d 172, 174 (10th Cir.1962) (citations omitted).

23. 29 C.F.R. § 541.1.

24. 29 C.F.R. § 541.1(f).

25. 29 C.F.R. § 541.102(a).

adjusting their rates of pay and hours of work; (3) directing their work; (4) handling their complaints and grievances and disciplining them when necessary; (5) planning the work; (6) determining the techniques to be used; (7) apportioning work among workers; (8) determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; and (9) providing for the safety of the men and the property.[26]

 Whether management constitutes an employee's primary duty is a fact-based inquiry guided in part by the amount of time spent on management duties.[27] In the ordinary case, primary duty means the major part, or over 50 percent, of employee's time.[28] Time alone, however, is not determinative. "When the employee spends less than 50 percent of his time on management, the following four factors are to be considered in determining whether management is an employee's primary duty: (1) the relative importance of the managerial duties as compared to other types of duties; (2) the frequency with which the employee exercises discretionary powers; (3) her relative freedom from supervision; and (4) the relationship between her salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor."[29] Thus, even an employee spending less than 50 percent of his time on management may be considered an exempt executive if other factors support this conclusion.[30] With these principles in mind, the court now turns to Defendant's specific contention that all Plaintiffs are exempt executive employees under the FLSA.

### i. Facts Common to All Positions

With the exception of Bell, who is now retired, all the Plaintiffs are assigned to seven units within the LKPD. These assignments are: (1) Patrol Unit; (2) Drug Enforcement Unit; (3) Investigations Unit; (4) Traffic Unit; (5) Internal Affairs Unit; (6) Training Unit; and (7) Special Projects Unit.[31]

Despite the different unit assignments, the work of every sergeant is subject to the same job description promulgated by the LKPD ("Job Description"). The Job Description sets forth a "descriptive list of the range of duties performed by employees in the class," and is "not intended to reflect all duties performed within the job."[32] The Job Description was most recently updated in January, 2003. It provides the following definition of the "Police Sergeant/Unit Commander" position:

> [t]o manage, supervise, assign, review and participate in the work of a specific division, unit or shift within the Police Department; to supervise and participate in the performance of in-

---

**26.** 29 C.F.R. § 541.102(b).

**27.** 29 C.F.R. § 541.103; *see also Department of Labor v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir.1994).

**28.** *Id.*

**29.** *Hinsdale, et. al., v. Liberal Housing Authority*, 1997 U.S. Dist. LEXIS 18802, *46 (D.Kan. Sept. 24, 1997), citing 29 C.F.R. § 541.103; *Hays v. City of Pauls Valley*, 74 F.3d 1002, 1007 (10th Cir.1996); *City of Sapulpa*, 30 F.3d at 1287.

**30.** *Hays*, 74 F.3d at 1007.

**31.** Presently, Plaintiffs Shanks, Hadl, Hubbel, Fellers and Warren are assigned to Patrol, Nickell is assigned to Training, Fultz to Special Projects, Khatib to Drug Enforcement, Pattrick to Technical Services, Roberts to Traffic and Pryor to Investigations. Prior to his retirement, Bell was also assigned to Patrol.

**32.** Exhibit 4 to Defendant's Motion for Summary Judgment, p. 1.

vestigations, patrol, traffic control, special services, administrative and technical support, training programs, crime prevention, and other operational or support duties; and to perform a variety of administrative and technical duties in support of the department.[33]

Under the heading "Supervision Received and Exercised," the Job Description states that the sergeants: (1) receive "general direction from the Police Chief and Lieutenant;" (2) "routinely" exercise "direct supervision of up to thirty sworn and non-sworn personnel;" and (3) are expected to "direct the response of all on-duty personnel in the absence of the Chief of Police or Lieutenant." [34]

The Job Description sets forth numerous examples of "important responsibilities and duties" performed by the sergeants. Included among "essential duties and responsibilities" are such things as:

1. Plan, prioritize, assign, supervise and review the work of subordinate personnel in an assigned division, unit or shift within the Police Department; provide supervisory, technical and administrative direction to personnel in assigned areas. . . .

2. Participate in the selection of staff; provide or coordinate staff training; work with employees to correct deficiencies; implement discipline procedures; instruct sworn and non-sworn staff regarding applicable policies, procedures and tactics.

3. Participate, research and make recommendations for the development and administration of the department's budget; forecast staffing and resource requirements; manage and approve expenditures and purchases applicable to assigned areas; develop specifications for equipment and supplies.

4. Recommend and assist in the implementation of goals and objectives; establish schedules and methods for providing field operations and departmental services; monitor the implementation of applicable operational policies and procedures; assist with projecting and planning budget expenditures, and staffing and equipment needs.

5. Supervise and participate in all shift duties as assigned, including enforcing local and state laws, issuing citations, making arrests, administering first aid, transporting criminal offenders, conducting investigations, providing training, and performing technical and administrative services.

6. Review the work of departmental personnel to ensure compliance with department policies and procedures; review reports submitted by officers to verify completeness and compliance with required standards; conduct performance evaluations of personnel and make recommendations for promotions, demotions and other personnel activities.

7. Prepare various reports on operations and activities; oversee reporting activities of assigned staff. . . .

8. Respond to major crimes, accident scenes and emergencies; assume command as necessary; oversee investigation and review of multiple and on-going crimes, accidents and injuries.

---

**33.** Exhibit 4 to Defendant's Motion for Summary Judgment, p. 1.

**34.** Exhibit 4 to Defendant's Motion for Summary Judgment, p. 1.

9. Provide information to the public to increase the awareness of crime prevention....

10. Function as a front-line liaison to the media and the public; provide timely and accurate information to the media; respond to requests from the media for timely and accurate information.

11. Oversee and conduct internal investigations; ... participate in investigations; ... make recommendations for actions as appropriate.

12. Oversee investigation activities; assign cases to subordinate personnel for investigation; monitor ongoing investigations; review reports; conduct criminal investigations as appropriate....

13. Oversee, develop and coordinate training programs for department; supervise recruitment process for police personnel; prepare and administer training lessons; conduct applicant interviews during recruitment process....

14. Oversee, manage, direct and coordinate multiple activities, scenes and services of an operational shift; oversee patrol activities; ... administer schedule and ensure appropriate staffing resources are allocated to shift.... [35]

During their depositions, all the Plaintiffs expressed general agreement that the Job Description, including the specific examples, accurately represents the duties sergeants in the LKPD are expected to perform. In their Response to Defendant's motion for summary judgment, Plaintiffs point out that many of these tasks are done with the supervision of a lieutenant. Defendant does not deny that Plaintiffs are subject to a chain of command, but insists that the potential of oversight by the higher ranks in the LKPD neither renders the Job Description inapplicable nor transforms Plaintiffs into non-exempt employees for purposes of the FLSA.

In addition to the job description promulgated by the City of Lawrence, Defendant has provided the court with a list of Sergeant's Duties. [36] In pertinent part, this list provides that sergeants:

1. Prepare work schedules and make daily assignments of the police officers assigned to their respective work groups.

2. Have discretionary authority to assign police resources as needed.

3. Supervise line personnel, review and approve reports, assist with officer evaluations, and manage shift in the absence of their lieutenant.

4. May make decisions overriding Computer Assisted Dispatch ("CAD") protocol.

5. In the absence of the lieutenant and Chief of Police, act as the on-site representative of the Chief of Police.

6. Attend staff meetings, staff retreats, prepare internal and external reports and recommend policy changes.

7. Are responsible for the implementation and adherence to department policy and procedure.

---

**35.** Exhibit 4 to Defendant's Motion for Summary Judgment, pp. 1–2.

**36.** Exhibit 11 to Defendant's Motion for Summary Judgment. The origin of this list is unclear to the Court. However, it was used as an exhibit during the depositions of the Plaintiffs and is introduced to the Court as a Deposition Exhibit 1 to the deposition of Sergeant Larry Mark Warren, wherein it is referred to on pages 13 through 14.

8. Are permitted to give media releases and speak for the department.

9. Investigate alleged officer misconduct and recommend discipline.

10. Direct investigations.

11. Manage and supervise civilian employees.

12. Direct training of officers and recruits.

13. Lead specialty units in the department.

14. Represent the Chief of Police and department in community planning meetings, various boards, and meetings of citizen groups.[37]

The list further specifies that sergeants do not:

1. Bid for their work preferences.

2. Get assigned to a patrol district.

3. Take reports or write tickets on a daily, mandatory (dispatch directed) basis.

4. Take accident reports.

5. Lose pay when taking time off for unusual activities (dentist, doctor, etc.).

6. Get assigned any call unless a supervisor is requested by officers at the scene, as directed by a lieutenant or the Chief of Police, or if the sergeant wants to participate in an unusual or high profile event.[38]

As was the case with the Job Description, Plaintiffs asked about this list of sergeants "dos" and "don'ts" during a deposition concurred that it accurately represented some of their activities.

Although they may be modified in certain respects by events in the field or adapted to suit the individual sergeant's particular unit assignment, it appears that the Plaintiffs' actual duties do not differ substantially from the Job Description or the Sergeants' Duties list. It is uncontroverted that sergeants have the authority to hire non-sworn civilian employees, participate in the hiring of sworn police officers, perform evaluations of employees under their supervision, and discipline or recommend discipline of both civilian and sworn police officers, which discipline may include the termination of civilian employees. These facts are uncontroverted despite Plaintiffs assertion that they are.[39] Plaintiffs suggest that the potential of lieutenant oversight over all of these duties necessarily negates the fact that sergeants have the authority to perform them. As will be discussed in greater detail below, the court disagrees with Plaintiffs' contention.

In dealing with the public, it is clear to the court that sometimes Plaintiffs issue press releases, however this authority is limited by internal police department protocol. Plaintiffs contend that, contrary to the Defendant's assertions, they are not permitted to make press releases on behalf of the department. Plaintiffs support their position with an affidavit from Plaintiff Shanks, wherein he states that sergeants may issue press releases "only after having been given specific direction to do so and after having the Chief's permission."[40] Defendant requests that the court strike this portion of Shanks's affida-

---

**37.** Exhibit 11 to Defendant's Motion for Summary Judgment.

**38.** Exhibit 11 to Defendant's Motion for Summary Judgment.

**39.** Plaintiff Shank's statement in his Affidavit (Exhibit A to Plaintiffs' Response to Defendant's Motion for Summary Judgment) that

he is not "aware of" any policy permitting a sergeant to unilaterally terminate a civilian employee is not sufficient to controvert Defendant's evidence that sergeants have this power.

**40.** Exhibit A to Plaintiffs' Response to Defendant's Motion for Summary Judgment, ¶ 12.

vit as it contradicts his earlier deposition in which he stated that the job description, which includes the authority to make press releases, "generally speaking" fairly represents in a general way the duties and responsibilities of a police sergeant. The court agrees with the Defendant that a party may not, in an affidavit, contradict previously sworn testimony in order to create a question of fact.[41] However, the court finds Shanks's affidavit to not be a contradiction but rather an explanation of his prior deposition testimony.[42] In his deposition, Shanks specifically stated that the job descriptions is an "overview" rather than a complete list of the sergeants' duties.[43] In his affidavit, he was able to clarify his response by pointing to a specific difference between the list and the actual duties as they · are performed in the field. This conclusion is further supported by the depositions of Hubbel, who stated that sergeants are not supposed to "deal with" things that do not qualify as "late ·breaking news" [44] and of Hadl, who testified that sergeants are permitted to issue press releases "with the provision that the chief is briefed on it." [45]

When it comes to the actual supervision of their shifts, Plaintiffs are responsible for the creation of work schedules for their subordinates and for making decisions regarding work assignments and reassign-ments. The occasional ·participation in these tasks of police officers does not negate Plaintiffs' responsibility for their performance. Plaintiffs conduct shift briefings, make car assignments, supervise field activities, review and approve officer reports and affidavits, and debrief officers at the end of the shift. Plaintiffs also have the authority to alter officer assignments, to keep officers on duty beyond the end of their shift and to assign officers "into plain clothes." The fact that Plaintiffs perform these duties is uncontroverted despite Plaintiffs' repeated assertions that all of these duties are subject to lieutenant oversight.[46]

#### ii. Facts Regarding Individual Plaintiffs

The court has combed through the record and finds that Defendant has presented uncontroverted evidence regarding the amount of time each Plaintiff spends performing management duties. With respect to Plaintiffs Nickell, Shanks, Hadl, Hubbel, and Warren, Defendant supplied the court with answers to a 1994 Job Analysis Questionnaire ("Questionnaire"), which was conducted as part of a Ralph Andersen & Associates study to classify and evaluate the compensation of all of the City of Lawrence's full-time employees.[47] In their responses to the Questionnaire, Nickell, Shanks, Hadl, Hubbel and Warren

---

**41.** *Hurde v. Jobs Plus–Med,* 299 F.Supp.2d 1196, 1204, n. 5 (D.Kan.2004).

**42.** *Demos v. City of Indianapolis,* 126 F.Supp.2d 548, 557 (S.D.Ind.2000) (A court may accept an arguably "self-serving" affidavit when the party's non-specific answer is given in response to a vague deposition question.).

**43.** Exhibit 22 to Defendant's Motion for Summary Judgment, 60:12–16.

**44.** Exhibit E to Plaintiffs' Response to Defendant's Motion for Summary Judgment, 91:1–8.

**45.** Exhibit F to Plaintiffs' Response to Defendant's Motion for Summary Judgment, 61:14–19.

**46.** The court will later address the question of how much oversight lieutenants exercise, as at least one plaintiff testified that any decisions regarding work assignments that are "outside of the routine" have to be approved by a lieutenant. *See* Deposition of Sergeant Nickell, Exhibit C to Plaintiffs' Response to Defendant's motion for Summary Judgment, 57:7–12.

**47.** Defendant's Motion for Summary Judgment, p. 5, ¶ 15.

indicated that they spend the majority of their time performing tasks that fall within the definition of management duties. Nickell allocated 97%[48] of his time to management duties, Shanks allocated 67%,[49] Hadl allocated 79%,[50] and Hubbel allocated 77%.[51] Warren allocated almost all of his time accounted on the Questionnaire to management duties,[52] and in his deposition he stated that directing and evaluating

work of other employees takes a "fair" part of his workday.[53] Furthermore, Defendant presented evidence that had the Questionnaire been given today, the responses of these Plaintiffs would have been substantially the same.

For the Plaintiffs who did not complete the 1994 Questionnaire, Defendant presented deposition testimony showing that the majority of their time is dedicated to

**48.** This figure is arrived at by combining the percentages Nickell assigned to supervising employees (50%); assigning duties (5%); reviewing reports (5%); training (15%); counseling (2%); evaluating (1%); improving working conditions (5%); ensuring proper use of equipment (5%); purchasing equipment (5%); discipline (1%); staff meetings (1%); and maintaining records (2%). *See* Defendant's Memorandum in Support of Motion for Summary Judgment, p. 14.

**49.** In responding to the Questionnaire, Shanks's allocation of time added up to 122%. Following the Plaintiffs' clarification in the Response to Defendant's Motion for Summary Judgment, the court will subtract 30% from Shanks's total time allocation, leaving 92% of his time accounted for. The court is not concerned with the 8% that is unaccounted as it does not consider this discrepancy to be dispositive. The 67% figure is arrived at by combining the percentages Shanks assigned to sorting reports for follow-up and assignment (5%); assigning cases for investigation (5%); approving police reports (5%); supervising detectives (30%); maintaining police [sic] and procedure (1%); supervising clerk-typist position (1%); assisting in the writing of early evaluations (5%); taking the lead in major case investigations (deaths/homicides) (5%); and trouble-shooting (10%). *See* Defendant's Memorandum in Support of Motion for Summary Judgment, p. 17.

**50.** This figure is arrived at by combining the percentages Hadl assigned to briefing patrol on intelligence and daily assignments (15%); training (15%); evaluating subordinates (5%); participating on departmental committees and task forces (1%); responding to calls for assistance from officers and others (5%); acting as liaison between the shift and the department (5%); inspecting officers' daily work product (10%); counseling officers re-

garding problem areas (5%); discipline (5%); orchestrating care and maintenance of patrol cars (3%); acting as lieutenant in his absence (5%); and commanding the control of critical incidents until they are resolved or she is relieved by a superior officer (5%). *See* Defendant's Memorandum in Support of Motion for Summary Judgment, pp. 19–20.

**51.** This figure is arrived at by combining the percentages Hubbel assigned to supervising subordinates (20%); reviewing reports and records (6%); approving reports (3%); preparing work schedules (2%); evaluating subordinates (3%); ordering equipment and uniforms (4%); arranging training (2%); answering questions and complaints (2%); authorizing euthanasia for certain animals (1%); trouble-shooting (3%); handling internal affairs investigations and citizen inquiries (7%); preparing letters and reports for internal affairs (2%); arranging schedules (2%); receiving complaints (2%); checking employee time sheets and recording them in the computer (6%); answering payroll questions for employees (2%); approving distribution of No Parking signs (2%); receiving requests for off-duty employment (3%); making arrangements for officers working off-duty (3%) and participating in the hiring and termination of employees (2%). *See* Defendant's Memorandum in Support of Motion for Summary Judgment, pp. 25–26.

**52.** As Defendant points out in its Memorandum in Support of its Motion for Summary Judgment, Warren's total allocation amounted only to 42%. Of that 42%, almost all of the tasks listed fall within management duties.

**53.** Deposition of Warren, Exhibit 10 to Defendant's Motion for Summary Judgment, 83:6–21.

management duties. Plaintiff Fultz testified that he plans and assigns work for officers under his supervision;[54] participates in interviewing, selecting and training of employees; directs and evaluates work of other employees; handles grievances; and doles out verbal discipline.[55] And while anything beyond verbal discipline must be approved through Plaintiff Fultz's lieutenant, Futz testified that most discipline takes place in the form of verbal reprimands, which he has authority to give out himself.

Plaintiff Khatib described his current duties as supervising five employees, assigning investigations, coordinating investigations, ranking investigations by importance to ensure that the important investigations have adequate resources devoted to them, acting as a liaison with outside units and agencies, participating in investigations as a supervisor, acting on search warrants, making controlled purchases, and performing evaluations of his subordinates.[56] Khatib also testified that, "within reason" he has the "general discretion to run [his] unit as [he sees] best without having to clear each and every thing with Lieutenant Affalter."[57]

As a sergeant in the patrol unit, Plaintiff Pattrick testified that he assigned officers to various districts, monitored manpower, responded to major incidents, and spent his time supervising the shift and being "in charge of everyone."[58] Pattrick could not, during his deposition, pinpoint the exact amount of time he spent on supervisory duties as opposed to being out in the field; however, he did agree that supervision was his primary function and the field activities he performed were often necessitated by inadequate staffing. As sergeant in the Technical Services Division, Pattrick fields complaints from citizens about police officers and from officers about other officers; conducts investigations; is in charge of the front office personnel, including the civilian technical services manager; is in charge of the evidence division; and is the contact point for all media questions.[59] Pattrick also testified that he is "directly involved" in hiring of front office personnel through interview board and recommendations.[60] Prior to the hiring of the Technical Services Division manager, a civilian employee, Pattrick performed all the evaluations of front office personnel. Currently the evaluations are performed by the civilian manager but must be approved by Pattrick himself and his supervising lieutenant. With the exception of fielding all the media inquiries, Plaintiff Pattrick does not appear to perform any work that would not qualify as management under the regulations.

During his assignment to the Community Services Unit, Plaintiff Bell provided training, made job assignments, participat-

54. Deposition of Fultz, Exhibit 24 to Defendant's Motion for Summary Judgment, 43:21–44:4.

55. Deposition of Fultz, Exhibit 24 to Defendant's Motion for Summary Judgment, 45:5–46:21.

56. Deposition of Khatib, Exhibit 25 to Defendant's Motion for Summary Judgment, 17:2–18:6.

57. Deposition of Khatib, Exhibit 25 to Defendant's Motion for Summary Judgment, 18:7–10.

58. Deposition of Pattrick, Exhibit 28 to Defendant's Motion for Summary Judgment, 8–12:7. Pattrick did testify that sometimes a patrol shift would be manned by as many as three supervisors. *See* Pattrick Deposition, 8:20–22.

59. Deposition of Pattrick, Exhibit 28 to Defendant's Motion for Summary Judgment, 14–22:17.

60. Deposition of Pattrick, Exhibit 28 to Defendant's Motion for Summary Judgment, 22:18–25.

ed in the selection of employees, and was involved in basic supervision of civilian personnel in animal control, parking control and school crossing guards.[61] Bell testified that his supervising lieutenants were not intimately involved in the day-to-day operations of his unit.[62] As noted above, Plaintiff Bell also agreed with most of the sergeants' duties listed in various job description documents. Bell did take issue with the proposal that sergeants select personnel by stating that he does not "select" but rather recommends particular recruits for hiring.[63]

Plaintiff Roberts estimated that he spends half of his day in the Traffic Unit managing the officers under him and one fourth with his officers in the field, both as an observant and as a participant. He estimated that he performs the duties of a front-line patrol officers at some point during his shift two or three days out of every five. He testified that he goes into the field partly for training purposes and partly as his personal preference for managing his officers. However, when in the field, he only does enforcement and does not respond to accidents or make DUI arrests.[64] Roberts testified that 50% of his time is spent on management of the Traffic Unit, 25% out in the field doing enforcement to "become a better manager of the people who work under [him]," and 25% reporting Kansas Department of Transportation reimbursement to account for certain grants.[65]

Plaintiff Pryor testified that, as the Investigations sergeant, he assigns cases to detectives, oversees all cases being investigated, and performs administrative work. During a typical day, he spends three or four hours performing those duties. The rest of the day he spends studying crimes and trends to develop plans for his officers in the field and performing administrative chores.[66] Pryor also testified that while he takes on some, "but not very many," criminal cases, he is not directly working on any particular case during an ordinary workday.[67] Most of Pryor's time is spent at his officer or within the LKPD headquarters.[68]

As a Patrol sergeant, Plaintiff Fellers reviews officers' work, responds to calls to assist officers, and is responsible for general oversight of the field activities of the shift. While he occasionally works alongside his subordinates, he considers himself to be, first and foremost, a supervisor.[69] Fellers testified that he is one of the "range masters" in the fire range program, although he shares that responsibility with police officers. Fellers also oversees the bike patrol program.[70]

---

61. Deposition of Bell, Exhibit 29 to Defendant's Motion for Summary Judgment, 11–16.

62. Deposition of Bell, Exhibit 29 to Defendant's Motion for Summary Judgment, 17:10–12. For example, Bell testified that the Lieutenants did not get involved in his assignment of parking meter personnel. He also testified that the Lieutenants generally adopted his evaluations of subordinate employees.

63. Deposition of Bell, Exhibit 29 to Defendant's Motion for Summary Judgment, 39:9–20.

64. Statement of Material Fact ¶ 133, citing Deposition of Randy Roberts, 54–56.

65. Deposition of Roberts, Exhibit 30 to Defendant's Motion for Summary Judgment, 56:5–25.

66. Statement of Material Fact ¶ 144, citing Deposition of Pryor, 15–16.

67. Deposition of Pryor, Exhibit 31 to Defendant's Motion for Summary Judgment, 16:10–14.

68. Deposition of Pryor, Exhibit 31 to Defendant's Motion for Summary Judgment, 16:22–25.

69. Statement of Material Fact ¶ 154.

70. Deposition of Fellers, Exhibit 32 to Defendant's Motion for Summary Judgment, 22:6.

### iii. Application of the Executive Exemption to Plaintiffs

It is clear to the court that Plaintiffs perform management duties within the meaning of the FLSA executive exemption. As noted above, the regulations set forth a list of examples of work considered exempt, and the Plaintiffs perform the majority of the duties listed in the regulations. They participate in interviewing and selection of civilian and sworn employees; train police officers; set and adjust the hours of work for police officers; direct the work of police officers; handle complaints within the police department and from the public; plan the work of police officers; and review the police officers' reports. With the exception of Roberts, none of the sergeants regularly spends time in the field with the officers they supervise. However, even Roberts testified that while he spends approximately one fourth of his time in the field with his officers, he does so because it is his preference for managing his officers and for keeping up his training. Furthermore, while in the field, Roberts does not respond to accidents or make DUI arrests.

In performing work done normally by the police officers, Plaintiffs act outside of the scope of their daily duties. For example, Hadl testified that she writes traffic tickets only if patrol officers are unavailable or she witnesses a serious accident. Similarly, Pattrick performs police officer's duties only when the shift is undermanned or extremely busy. And Sergeant Pryor testified that he personally investigates "some, but not very many" cases, while most of his time is spent supervising detectives and developing plans for conducting investigations. The fact that Plaintiffs sometimes work alongside police officers does not preclude the application of the executive exemption. "Although Plaintiffs may, at one time or another, perform all the duties carried out by their subordinates, their accountability for everything that takes place under their command and their ability to exercise discretion sets them apart from inferior officers." [71]

In *Anderson v. The City of Cleveland, Tennessee*, the court rejected a bid by lieutenants in Cleveland's police department to qualify for overtime pay on the basis that they were not exempt executive employees. Duties performed by lieutenants in that case were very similar to the duties carried out by the Plaintiffs here. The court held that the exemption applied even though lieutenants sometimes worked alongside their subordinates in the field because the primary value of such lieutenants to the defendant city was as supervisors, not as foot soldiers in fighting crime. "Plaintiffs ... testified they spend very little time performing basic police work like making arrests, issuing citations and investigating crime, and when they work alongside their men, it is in a backup or support capacity. The evidence also shows Plaintiffs were regularly evaluated on their supervisory and managerial capabilities, indicating Plaintiffs [sic] primary value to the City was a supervisors rather than ordinary police officers." [72]

The court finds the *Anderson* case to be particularly instructive. The Defendant in this case does not view the Plaintiffs as ordinary police officers, nor do the Plaintiffs view themselves as such. During their depositions, Plaintiffs repeatedly described themselves as supervisors. The bulk of Plaintiffs' tasks falls squarely in the category of management duties. The Plaintiffs rarely work in the field alongside the officers they supervise. The Defendant clearly values the supervisory aspect of Plaintiffs' jobs, leaving essentially all

---

**71.** *Anderson,* 90 F.Supp.2d at 920.

**72.** *Anderson,* 90 F.Supp.2d at 920.

the responsibility for running their respective units to the sergeants. It would be unreasonable to conclude that lieutenants, rather than sergeants, are the first line of supervisors in the LKPD. The court has no evidence that lieutenants actually perform any of the shift-management tasks necessary for the efficient operation of a police department. With the exception of statements by the Plaintiffs that lieutenants oversee sergeants, the court has not been informed specifically as to the actual tasks performed by lieutenants.

The court's conclusion is supported by case law. In *Auer v. Robbins,*[73] the United States Court of Appeals for the Eighth Circuit considered whether detective police sergeants were covered by the maximum hour/overtime provisions of the FLSA. That court decided the detective sergeants qualified as exempt "executive" employees under the FLSA.[74] In *Auer* the detective police sergeants supervised the work of 13 to 16 detectives.[75] The subordinate detectives were required to provide sergeants with all information concerning police matters, and sergeants reviewed information concerning interrogations and interviews.[76] The sergeants consistently used discretion to ensure the case load was being managed correctly, and, although sergeants might sometimes become directly involved in investigations, their primary duty was to manage and oversee the investigative function and report results up the chain of command.[77]

The United States Court of Appeals for the Ninth Circuit reached the same conclusion in *Barner v. City of Novato.*[78] That case held that the plaintiffs were exempt when they managed a recognized subdivision of the police department, even though the officers often performed the same duties as their subordinates.[79] The Ninth Circuit stated that even though the plaintiffs might occasionally perform a task as menial as railroad crossing guard work, they carried the rank of lieutenant or captain and had supervision over an entire aspect of police department operation, such as services, patrol, and youth services.[80]

The court's conclusion is not altered by the argument that the performance of many of the Plaintiffs' duties is subject to the direct oversight of either the lieutenants or the Chief of Police. Defendant acknowledges as much in its Reply.[81] However, the presence of a hierarchical structure does not negate the supervisory nature of work performed at various levels. If that were the case, as Defendant aptly puts it, only one person in any given organization could ever be considered exempt within the meaning of the FLSA. Just because Plaintiffs' decisions could be, and occasionally were, overridden, does not mean they were restricted or prohibited from making the decisions in the first place. In *Hinsdale,* the court concluded that the plaintiff was an exempt executive employee even though her decisions were "subject to parameters set by the defendant or to review by the defendant's Board."[82] It is the nature of Plaintiffs'

**73.** 65 F.3d 702 (8th Cir.1995).

**74.** *Id.* at 714.

**75.** *Id.* at 713–14.

**76.** *Id.* at 714.

**77.** *Id.*

**78.** 17 F.3d 1256 (9th Cir.1994).

**79.** *Id.* at 1260–61.

**80.** *Id.*

**81.** For example, Defendant agrees that the final say in both hiring and termination of sworn employees does not belong to the sergeants. Defendant also concurs that sergeants do not have totally unfettered discretion in assigning work and often collaborate on that task with lieutenants.

**82.** *Hinsdale,* 1997 U.S. Dist. LEXIS 18802, * 48, citing *Masilionis v. Falley's Inc.,* 904 F.Supp. 1224, 1229 (D.Kan.1995).

duties that controls the inquiry of whether their work was managerial, not the extent to which someone else may have had the authority to override the performance of such duties. And, it is clear to the court that the Plaintiffs' day-to-day duties fall squarely within the definition of "managerial duties" promulgated by the Department of Labor regulations. No reasonable person would conclude otherwise.

Having concluded that Plaintiffs perform management duties, the court must now decide whether performance of such duties was the Plaintiffs' "primary" occupation. If Plaintiffs spent more than 50 percent of their time on management duties, they are exempt from overtime requirements of the FLSA. If Plaintiffs spend less than 50 percent of their time on such duties, they may still be exempt if the management duties are more important than other duties Plaintiffs perform, they frequently exercise discretionary powers, enjoy a relative freedom from supervision, and receive compensation that is higher than compensation paid to police officers.

Defendant contends that the vast majority of Plaintiffs' time is devoted to management of their respective units. Plaintiffs object, arguing that virtually none of their time is actually spent on management because they are subject to constant oversight by their superiors, undermining any "supervisory" aspect of their duties.

In the two cases cited by the Plaintiffs in support of their position, the courts denied summary judgments to defendants who failed to demonstrate conclusively that the employees seeking overtime fit plainly and unmistakenly within the terms of the executive exemption. In *Aaron v. City of Wichita*, the court concluded that it could not determine how much time the plaintiffs, battalion and division chiefs and captains of a fire department, spent on managerial duties: "although the City presented evidence concerning the duties of fire captains in general, the evidence is less than revealing with respect to how these employees specifically spend their working time." [83] The court stated that it was "difficult, if not impossible, to determine what percentage of time [the plaintiffs] spend on managerial tasks." [84] Furthermore, the court found that questions of fact remained regarding the extent of controls the plaintiffs exert over the fire stations and other employees. The court concluded that the evidence presented was insufficient to allow a determination regarding "the number of discretionary decisions made by a fire captain in a typical work day," the "amount of input fire captains have on personnel decisions concerning their subordinates," and "the extent to which the fire captains' work is 'routinized' by the department's policies and procedures." [85]

Similarly, in *McGrath v. City of Philadelphia*, the court refused to grant summary judgment where it could not "ascertain the percentage of work" attributable to the managerial tasks nor "determine each class of [plaintiffs'] relative freedom from supervision" despite the fact that defendant offered generic job descriptions and some evidence that plaintiffs' actual duties corresponded to those set forth in the job description.[86] The court further suggested that genuine issues of fact remained on the "relative importance of managerial duties as compared with other activities." [87]

**83.** No. 96–3091, 113 F.3d 1245, 1997 U.S.App. LEXIS 13039, at *14–15 (10th Cir. May 23, 1997).

**84.** *Id.* 113 F.3d 1245, at *15.

**85.** *Id.* 113 F.3d 1245, at *17.

**86.** 864 F.Supp. 466, 489 (E.D.Pa.1994).

**87.** *Id.*

Plaintiffs now contend that the same factors that precluded summary judgment in *Aaron* and *McGrath* are present in this case. They argue that the court cannot. determine, as a matter of law, how much time Plaintiffs spend on managerial duties and whether the time they do spend performing such duties is so free from supervision as to allow summary judgment. Plaintiffs argue that virtually everything they do is subject to approval through the chain of command. Defendant disagrees, positing that it has marshaled sufficient evidence to demonstrate that Plaintiffs spend significantly more than 50 percent of their time performing managerial duties, or, in the alternative, that relevant factors demonstrate sufficient freedom from supervision and the importance the LKPD places on Plaintiffs' performance of managerial tasks.

To prevail on summary judgment, Defendant must demonstrate that the Plaintiffs fit "plainly and unmistakenly" within the exemption's terms. All the Plaintiffs spend well over 50% of their time on tasks that fall within the regulations' definition of management duties. With the exception of Sergeant Roberts, who spends a full quarter of his time tending to activities in the field, none of the other Plaintiffs devotes any significant portion of his daily work to tasks ordinarily performed by the subordinate police officers. Judging by the infrequency with which Plaintiffs are dispatched into the field, it is clear that the Defendant values Plaintiffs' supervisory and managerial activities far above the non-managerial tasks. "An employee's primary duty for purposes of the FLSA 'is that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time.' " [88] Plaintiffs' testimony demonstrates that they are required to be out in the field only if their units or shifts are understaffed or if some extraordinary event requires the presence of the entire police force out on the streets. At all other times, their primary responsibility in the eyes of the Defendant is to supervise their subordinates and tend to the running of their respective units or shifts.

Furthermore, while the Plaintiffs are not completely independent actors who function outside of any established chain of command, it is clear that they exercise significant discretion in their day-to-day work. Plaintiffs' strongest argument suggesting lack of independence relates to the constraints placed on the hiring and firing of police officers. The Court agrees that the sergeants of the LKPD do not have unilateral discretion to either hire or fire commissioned officers. However, they have discretion to recommend both hiring and discipline, and the uncontroverted evidence suggests that, at least with respect to the discipline, their recommendations are usually followed.

On the other hand, the Defendant has presented ample evidence to demonstrate that the lieutenants do not interfere with the Plaintiffs' performance of their daily duties, and the Plaintiffs have failed to contradict Defendant's evidence with concrete examples of direct supervision. Plaintiffs may not defeat Defendant's properly supported motion for summary judgment by simply stating, over and over, that the LKPD sergeants are subject to oversight and review by lieutenants or the Chief of Police. Being subject to such review does not negate the fact that the sergeants are also supervisors of police officers out in the field. No such evidence has been presented to the court. On the

---

88. *Hinsdale,* 1997 U.S. Dist. LEXIS 18802 at * 49, citing *Reich v. Wyoming,* 993 F.2d 739, 742 (10th Cir.1993).

contrary, Plaintiffs acknowledged that lieutenants do not interfere with their decisions regarding work assignment, training, officer evaluation, and routine supervision of officers. This case is, therefore, not analogous to either *Aaron* or *McGrath*, where the court was unable to ascertain the degree of plaintiffs' independence from supervision. The Court is confident that whatever authority lieutenants in the LKPD wield over the Plaintiffs, it comes in the form of general guidance rather than direct interference with the performance of their duties. In that respect, this case is most akin to *Anderson*, where the court upheld the executive exemption for police lieutenants after finding that "all Plaintiffs are charged with the responsibility of executing an entire law enforcement function, and they carry out this task with only general supervision from the Captain." [89]

Other courts have, under similar circumstances, granted summary judgment to defendant employers. In *Anderson* the court found plaintiff police lieutenants to be exempt executives where they all testified to be "in charge" of their particular units, to have the power to direct the work of their subordinates, and to determine how the men under their command were utilized. [90] The court found that, while plaintiff lieutenants were not free from "general" supervision, that fact did not preclude the finding that they were responsible for executing entire law enforcement functions. [91] The court also concluded that the plaintiffs' primary value to the defendant City was as supervisors rather than ordinary police officers. [92] All of these factors led the court in *Anderson* to hold that the plaintiffs fell within the executive exemption to overtime requirements.

Similarly, in *Shockley v. City of Newport News*, the Court of Appeals for the Fourth Circuit affirmed the district court's determination that police sergeants were exempt executive employees. [93] Plaintiffs in *Shockley* directly supervised their subordinates, evaluated such subordinates, and managed both the people and the equipment assigned to their units. The court found that these responsibilities "required the exercise of considerable discretion" and supported the district court's finding that the "Sergeants' primary duty was management and hence that they qualified as executives under FLSA regulations." [94]

Where, as here, the vast majority of Plaintiffs' daily work is directed at the running of their respective units or shifts and is relatively free from interference by lieutenants or the Chief of Police, and where the Plaintiffs' supervisory functions are of the utmost importance to the Defendant, the Court finds that Plaintiffs fall within the executive exemption to the FLSA overtime requirements. Because no issues of material fact remain, the court must grant Defendant summary judgment, as no reasonable person could conclude that the Plaintiffs failed to fall "plainly and unmistakenly" within the terms of the executive exemption.

### C. Administrative Exemption

As an alternative to its request for summary judgment on the basis of the executive exemption, Defendant contends that the case should be dismissed because the Plaintiffs' primary duties consist of the performance of administrative chores. Since the court has found that the Plaintiffs are executive employees exempt from

---

**89.** *Anderson,* 90 F.Supp.2d at 919.

**90.** *Anderson,* 90 F.Supp.2d at 918.

**91.** *Id.* at 919.

**92.** *Id.* at 920

**93.** 997 F.2d 18 (4th Cir.1993).

**94.** *Shockley,* 997 F.2d at 27–28.

the overtime provisions of the FLSA, thereby awarding summary judgment to the Defendant, the court will not address the parties' arguments regarding the applicability of the administrative exemption.

### III. Conclusion

When all the evidence is viewed in the light most favorable to the Plaintiffs, the record in this case compels the court to conclude that Plaintiffs are executive employees exempt from the overtime provisions of the FLSA. Because Defendant has demonstrated that the Plaintiffs fit plainly and unmistakenly within the terms of the executive exemption, the court will grant the Defendant's Motion for Summary Judgment on that basis. The court's conclusion, as a matter of law, that Plaintiffs are exempt executive employees renders the questions of the statute of limitations and the applicability of Regulation 114 moot. Likewise, in view of the court's decision, Plaintiffs' pending Motion to Strike Report and Testimony of Defendant's Expert (Doc. 47) is also rendered moot as such testimony was not relied upon by Defendant in support of its Motion for Summary Judgment. There being no other issues remaining for adjudication, the Court will also order the case dismissed with prejudice.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 52) is granted.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Report and Testimony of Defendant's Expert (Doc. 47) is found to be moot.

**IT IS FURTHER ORDERED** that this case is dismissed with prejudice.

**IT IS SO ORDERED.**